Roland WILLIAMS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 12, 2002.

Supreme Court of Delaware.

Submitted: June 4, 2002.

Decided: July 8, 2002.

Sandra W. Dean, Assistant Public Defender, Office of the Public Defender, Dover, Delaware, for Appellant.

William M. Kelleher, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for Appellee.

Before WALSH, BERGER, and STEELE, Justices.

PER CURIAM:

In this appeal from the Superior Court, we once again confront the problem of improper prosecutorial argument. We conclude that the prosecutor's remarks, characterizing the defendant in this case as "lying" and proposing that the jury must find the State's witnesses to be lying in order to acquit the defendant, were so patently improper that the trial judge should have intervened *sua sponte* to issue a curative instruction or enter a mistrial. The court's failure to do so was thus plain error, and we reverse.

I.

The appellant/defendant below, Roland Williams ("Williams"), was found guilty of delivering cocaine. Because of Williams' past felony convictions, the State moved to have him sentenced as an habitual offender, pursuant to 11 *Del. C.* § 4214(b). Following a hearing, the Superior Court granted the State's motion and Williams was sentenced to life in prison. This is Williams' direct appeal.

On the evening of February 15, 2001, police were conducting surveillance of the Kent Apartments on New Street in Dover, Delaware, a high drug area. Officer Hosfelt of the Dover Police Department was positioned behind a second floor window with an unobstructed view of New Street,

which was about fifty feet from the window. Officer Hosfelt observed Williams on the street below, and saw him approach a car that had pulled over in front of the Kent Apartments. Through an open window, Officer Hosfelt heard Williams ask the driver of the vehicle what he wanted. The driver was one William Scott, who drove to New Street that evening, alone, in order to purchase cocaine. Scott testified that he asked Williams for a twenty dollar piece of crack cocaine.

Officer Hosfelt further testified that he saw Scott hand Williams some money. Then, according to the officer, a third man came out of a nearby residence and took the money from Williams. That man then passed drugs to Williams, which Williams immediately handed to Scott. At this point, Officer Hosfelt radioed in what he had witnessed and Scott was apprehended a short distance away. The police found a piece of crack cocaine in a baggie in Scott's car. Meanwhile, Officer Hosfelt maintained surveillance of Williams and directed another police car to respond to his location and place Williams under arrest. After his arrest, Scott was brought back to the scene of the drug buy and asked to identify the seller. By this time, Williams had already been arrested. Scott identified Williams as the person who sold him the crack cocaine.

At trial, Williams testified in his own defense that the third man had conducted the drug deal with Scott entirely on his own, and that he, Williams, was simply in the wrong place at the wrong time. The jury returned a guilty verdict on the single count charged and this appeal followed. Williams challenges his conviction on various grounds. He argues that the trial court erred by (1) failing to intervene, *sua sponte*, to cure the effect of improper prosecutorial argument, (2) excusing for cause two prospective jurors who expressed disagreement with drug laws, (3) permitting unduly suggestive identification of the defendant, (4) allowing the State to question the defendant about a prior conviction for delivery of cocaine, (5) giving a jury instruction on accomplice liability which did not include a specific unanimity instruction, and (6) granting the State's habitual offender motion. We conclude that the trial court's failure to intervene to cure the prosecutor's improper argument requires reversal.

## II.

Williams argues that the prosecutor made several improper statements during closing argument that undermined the fairness of his trial. Williams offered no objection at trial to the prosecutor's closing argument, however, so this claim is reviewed for plain error. *See* Supr. Ct. R. 8; *Morris v. State*, 795 A.2d 653, 657 (Del. 2002). In order for improper prosecutorial arguments to constitute plain error, credibility must be a central issue in a close case and the prosecutor's comments must be so clear and defense counsel's failure to object so inexcusable that a trial judge, in the interest of fundamental fairness, has no reasonable alternative other than to intervene. *Trump v. State*, 753 A.2d 963, 964–65 (Del.2000); *see also Hughes v. State*, 437 A.2d 559, 571–72 (Del.1981) (determining whether improper prosecutorial remarks require reversal, considering the centrality of the issue affected by the alleged error, the closeness of the case, and the steps taken to mitigate the effect of alleged error).

For over twenty years, this Court has been admonishing prosecutors to follow ABA standards of conduct and refrain from making improper comments during summation that could prejudice the defendant. *See, e.g., Hooks v. State*, 416 A.2d 189 (Del.1980); *Hughes v. State*, 437 A.2d

559 (Del.1981); *Brokenbrough v. State,* 522 A.2d 851 (Del.1987). Unfortunately, our admonitions have gone largely unheeded. In *Brokenbrough,* we lamented the continued use by prosecutors of arguments in summation that have been declared improper by this Court as clearly in violation of professional norms. 522 A.2d at 861. We refused to reverse the defendant's conviction in *Brokenbrough* because we found that the prosecutor's improper remarks did not rise to the level of plain error. *Id.* We, nonetheless, noted that:

> Delaware courts will provide safeguards against a repetition of the same type of specific conduct that had been held to be error, albeit harmless error. A repetition of the same type or category of errors adversely affects the integrity of the judicial process. The standards of professional conduct in Delaware have never been and will never be measured by the lowest acceptable common denominator.
>
> We fully expect that our criticism here will not fall on deaf ears and that judicial admonition, even in the absence of reversal, will encourage the curtailment of the type of improper closing arguments we have been repeatedly called upon to review. In the future, such conduct will not be tolerated by this Court and must not be permitted by trial courts.

*Id.* at 864.

Despite this, and many similar comments, we continue to consider claims of improper prosecutorial comments in jury summations. Most recently, this Court reversed an assault conviction in *Morris v. State* because the prosecutor argued to the jury that it could acquit the defendant only if it found that the State's witnesses were lying. 795 A.2d 653, 657 (Del.2002). In *Morris* we noted that this type of argument is "patently improper," as explained sixteen years earlier in *Fensterer. Mor-*ris, 795 A.2d at 660, *citing Fensterer v. State,* 509 A.2d 1106, 1112 (Del.1986) (noting that a jury is "not required to choose between the State's and the defendant's version of the facts," and that a defendant has "no affirmative burden to disprove the testimony of the police officers," as implied by the prosecutor's remarks).

■ In this case, Williams attacks statements made in closing argument on three grounds, arguing that the prosecutor (1) violated *Morris* by telling the jury that if they believed Officer Hosfelt, they must find the defendant guilty, (2) improperly labeled the defendant as lying, and (3) improperly vouched for the credibility of Scott. The State denies that any of the challenged statements were improper and argues that they constituted permissible comment on the evidence. Illustrative of comments made throughout the summation, in conclusion, the prosecutor urged the jury:

> [W]hen you're considering [Williams'] credibility ... consider before your very eyes he lied because remember on direct examination he said to your very faces, he said, "I don't sell drugs. I just use them." That's what he told you all. Until he was confronted with the information that the State had that he had before been convicted of selling drugs. Then he said, "Oh yeah, yeah, yeah." Consider that. Can you believe anything he says?
>
> Ladies and gentlemen, it comes down to—it's a fairly simple case. It comes down to whether you believe the State's witnesses or the defendant. You have police officers for the State. You have Mr. Scott who you can determine whether or not you believe what he was saying. You have the defendant, previously convicted of dishonesty, a person who has reason to lie today to you to try to get out of this whole mess that he's

gotten himself into, and a person who is—importantly, a person who was caught lying in front of your very eyes here in court today under oath.

We have concluded that these remarks improperly suggested to the jury that they must believe the State's witnesses are lying in order to acquit the defendant and improperly branded the defendant as lying. *See Morris,* 795 A.2d at 660; *Hughes,* 437 A.2d at 571. The prosecutor's earlier comment to the jury, suggesting that they consider that Scott's "story" was the same as Officer Hosfelt's, was permissible because it merely pointed out that two witnesses had testified in a consistent manner, and, therefore, did not constitute improper vouching. *See Saunders v. State,* 602 A.2d 623, 624 (Del.1984) (defining improper vouching as a prosecutor's comment implying personal knowledge of the truth of a witness' statement); *Clayton v. State,* 765 A.2d 940, 944 (Del. 2001) (holding that a prosecutor's assertion that the State's witnesses had been consistent was permissible because it could be deduced from the evidence).

Credibility determinations were central to this case. Williams argued that the State had the wrong man, that Scott and Officer Hosfelt were mistaken. The drug buy did take place at night. Officer Hosfelt was, by his own admission, fifty feet away, and there was a third person present at the scene. The jury had to decide whose version was accurate. More importantly, the jury had to decide whether the State's witnesses proved, beyond a reasonable doubt, that Williams was the seller. The prosecutor's argument to the jury was more than a mere simplification of an evidentiary difference. It reduced the dispute to a clash between the "story" of a defendant charged with selling drugs and a police officer, sworn to uphold the law. The jury could have found, and indeed the defense argued, that the officer was merely mistaken in his identification, as was Scott, an admitted drug user. Because this case hinged on credibility, we cannot say that the prosecutor's improper remarks were harmless beyond a reasonable doubt.

Furthermore, the prosecutor's continued characterization of Williams as "lying" was both inflammatory and patently improper. As we stated in *Hughes,* "liar is an epithet to be used sparingly in argument to the jury." 437 A.2d at 571. While there is no blanket prohibition on the use of the word, we once again admonish prosecutors to use care in applying such a flash word to situations, as here, when testimony labeled a "lie" could just as easily be characterized as mistaken. *See also* Webster's Third New International Dictionary 1305 (unabr. 1993) (defining lie as "to make an untrue statement with intent to deceive"). On direct examination, Williams was asked: "Did you have any cocaine—were you a dealer?" He responded, "No, ma'am, I only use." The State rebutted this testimony with evidence that Williams had been convicted of selling drugs several years ago in Florida. While one conclusion to be drawn from this exchange is that Williams was lying, *i.e.,* had an intent to deceive, an equally tenable conclusion is that Williams was speaking in the present tense when he said that he only uses drugs, but does not sell them. If the latter is the case, then Williams did not "lie," but merely mistook the question asked or erred in its scope. The question posed was not, "have you ever sold drugs?," in which case his negative response could perhaps be characterized as a lie. The prosecutor's statement that Williams' testimony was a lie "pass[ed] from a legitimate inference drawn from the evidence to the expression of an impermissible personal opinion." *Morris,* 795

A.2d at 660, n. 15 *(quoting Hughes,* 437 A.2d at 571).

The prosecutor's remarks were so clearly impermissible that the trial judge had a duty to intervene, notwithstanding the absence of an objection by defense counsel. *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986). Accordingly, we reverse Williams' sentence and vacate his conviction.

While our ruling that plain error exists requires reversal, we, nonetheless, in summary fashion rule upon the remaining claims of error to guide the court in the event of a new trial.

Williams challenges several discretionary rulings of the Superior Court. We find no abuse of discretion in the trial court's decision to excuse two prospective jurors for cause, admit into evidence Scott's on scene identification of Williams, or allow the State's use of Williams' prior felony conviction for impeachment, after performing the requisite analysis under D.R.E. 609(a)(1). *See Parson v. State,* 275 A.2d 777 (Del.1971); *Watson v. State,* 349 A.2d 738, 740 (Del.1975); *Morris v. State,* 795 A.2d 653, 665 (Del.2002). Additionally, we have determined that the inclusion of an accomplice liability instruction without a specific unanimity instruction did not render the jury instructions, as a whole, erroneous as a matter of law. *See Probst v. State,* 547 A.2d 114, 122 (Del.1988) (holding general unanimity instruction is sufficient in routine case). Finally, we have determined that the trial court's decision to sentence Williams as an habitual offender was supported by substantial evidence, free from legal error, and does not constitute excessive punishment. *See Walker v. State,* 790 A.2d 1214, 1221 (Del.2002); 11 *Del. C.* § 4214.

The judgment of the Superior Court is REVERSED and this matter REMANDED for further proceedings consistent with this opinion.