Ronald L. HUNTER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 239,2000.

Supreme Court of Delaware.

Submitted: Sept. 24, 2002.
Decided: Dec. 30, 2002.

Andre M. Beauregard (argued) and David W. Jones, of Brown, Shiels, Beauregard & Chasanov, Dover, for Appellant.

John Williams (argued), Robert J. O'Neill, Jr., and Marie O'Connor Graham, of the Department of Justice, Dover, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court en Banc.

PER CURIAM:

In this criminal appeal, we again consider the impact of a prosecutor's improper jury summation on a defendant's right to a fair trial. This Court has consistently and repeatedly held that the State may not knowingly misstate the evidence; personally vouch for the credibility of witnesses; or use inflammatory language designed to appeal to the jurors' passions and prejudices. The prosecutor in this case forces us to add another admonition to the list: do not disparage the "reasonable doubt" standard that governs the jury's determination of guilt. Moreover, because our prior decisions have not eliminated this

problem, we conclude that we must modify our analysis of the prejudicial effect of improper comments. Accordingly, in addition to applying the three part test announced in *Hughes v. State*,[1] we will consider whether the prosecutor's statements are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process. Where, as here, several of the prosecutor's comments have been specifically identified as improper in past decisions, we conclude that reversal is mandated.

### Factual and Procedural Background

On December 10, 1998, a Special Investigations Unit of the Delaware State Police was conducting surveillance on Ronald L. Hunter as part of a drug investigation. Two officers, driving in separate police cars, were following Hunter on Route 13 when they saw him commit a lane change violation. Corporal Wayne Warren, who was in an unmarked car, activated his flashing emergency lights and followed Hunter as he turned right, onto Route 10, and then immediately turned right again, onto State Route 29. Corporal Warren McGee, who was in a fully marked police cruiser, also activated his emergency lights and joined the pursuit. As Hunter turned onto State Route 29, both officers saw a "white ball" come out of the passenger side window of Hunter's car. Warren continued to chase Hunter, who collided with another vehicle on State Route 29 and then attempted to flee on foot. McGee stopped to look for the "white ball," and discovered a yellow paper napkin containing 14 small blue plastic bags of crack cocaine.

After Warren apprehended Hunter, McGee arrived and took him into custody. At that time, Hunter refused to give McGee his name. McGee found $4,399 in Hunter's pocket and a Massachusetts driver's license in the name Anthony Jones. McGee asked Hunter if he was Anthony Jones, and Hunter answered, "That's what the I.D. says, right?" Later, the police ran Hunter's fingerprints through the State fingerprint identification system and came up with a match for the name Scottie Brown. McGee asked Hunter whether he was Scottie Brown and Hunter said yes. Nonetheless, the fingerprints were sent to the Federal Bureau of Investigation where Hunter finally was identified.

Based on all of these events, Hunter was charged with tampering with physical evidence, resisting arrest, criminal mischief, possession with intent to deliver cocaine, maintaining a vehicle for keeping controlled substances, possession of drug paraphernalia, two counts of criminal impersonation, refusal to provide pedigree information and several traffic violations. He was acquitted on the criminal mischief charge and convicted on all others. The trial court denied his motion for a new trial and this appeal followed.

### Discussion

#### A. Prosecutorial Misconduct

Hunter raises several arguments on appeal, the most important one being his claim of prosecutorial misconduct. He identifies nine instances of allegedly improper comment during opening and rebuttal summations to the jury:

1. Misrepresentation of Evidence. During opening summation, the prosecutor said that Hunter told McGee that he was not employed. In fact, the evidence shows that Hunter refused to answer questions about his identity or employment, so the officer who filled out the relevant form listed Hunter's occupation as "None."

---

**1.** 437 A.2d 559 (Del.1981).

2. Misrepresentation of Evidence. During rebuttal summation, the prosecutor said that Hunter "basically conceded that those drugs came from that car." In fact, during Hunter's summation, counsel said, "there is a reasonable doubt as to whether or not this man threw anything out of the car."

3. Misrepresentation of Evidence. During opening summation, the prosecutor pointed out that Hunter, Anthony Jones and Scott Brown were all the same person. He then explained, "The evidence has shown this case is about a big dollar business, drugs. And when you're in that business, deception is your friend." The false identification evidence, however, only was introduced for the limited purpose of establishing that Hunter committed the crime of criminal impersonation.

4. Misrepresentation of Evidence. During rebuttal summation, the prosecutor suggested that the fact that Hunter was under surveillance by a drug enforcement unit raised an inference that Hunter was a drug dealer. As above, the surveillance information was allowed into evidence for the limited purpose of explaining how the events that led to these charges unfolded.

5. Disparaging Defense Counsel. Primarily during rebuttal summation, the prosecutor accused defense counsel of trying to "fool" and "confuse" the jury.

6. Disparaging the "Reasonable Doubt" Standard. Primarily during rebuttal summation, the prosecutor told the jury that the "classic defense" is reasonable doubt, and that the jury should not allow itself to be fooled into acquitting Hunter.

7. Misleading the Jury About The Burden of Proof. During rebuttal summation, the prosecutor suggested that, in order to find Hunter not guilty, the jury would have to disbelieve the State Police.

8. Referring to Evidence Not in the Record. During rebuttal summation, the prosecutor suggested that Hunter was a higher level of drug dealer than those who deal "hand to hand" in open air drug markets, but there was no evidence presented at trial about different levels of drug dealers.

9. Expressing Personal Opinion/Vouching for Witnesses. During rebuttal summation, referring to Hunter's argument about the criminal impersonation charges, the prosecutor said, "I can't quite buy that argument."

Hunter objected only twice during the closing arguments. Toward the end of his rebuttal summation, the prosecutor said, "Lastly, classic defense [that counsel] raises, reasonable doubt. If he can fool just one of you, that's all that is needed, just one." Hunter objected; the prosecutor withdrew his statement; and the trial court instructed the jury to disregard the comment. The prosecutor then continued, "If the defense attorney is successful in asserting this defense on reasonable doubt, then his client walks." Hunter again objected, saying that reasonable doubt is the law in this State. The trial court made no ruling, but instructed the prosecutor to confine his comments to the evidence and move on.

More than 15 years ago, this Court expressed "considerable concern" about prosecutorial misconduct, and the fact that prior decisions had not succeeded in improving the standards of trial conduct.[2] Unfortunately, our recent decisions note continued abuses: "Despite our repeated admonitions ..., prosecutors apparently have failed consistently to heed these admonitions. Prosecutors must resist the

---

**2.** *Brokenbrough v. State,* 522 A.2d 851, 854 (Del.1987).

urge to win at all costs...."[3] "For over twenty years, this Court has been admonishing prosecutors to follow ABA standards of conduct and refrain from making improper comments during summation that could prejudice the defendant."[4] This is the fifth appeal in one year where the Court found prosecutorial misconduct, and the third appeal this year where that misconduct forces the Court to reverse a conviction.[5]

■■■ The law in this area is well settled. The prosecutor "represents all the people, including the defendant"[6] and must "seek justice, not merely convictions."[7] In pursuing both goals, the prosecutor should abide by the American Bar Association's standards governing prosecution and defense functions.[8] Consistent with those standards, the prosecutor should not:(i) express personal beliefs as to the credibility of witnesses[9]; (ii) misrepresent the evidence presented at trial[10]; (iii) comment on the fact that a defendant exercised his or her constitutional right to remain silent[11]; (iv) denigrate the role of defense counsel[12]; (v) misrepresent the legal effect of defendant's statements[13]; (vi) appeal to the jury's sense of personal risk or the level of safety in the community[14]; or (vii) attempt to inflame the prejudices of the jury by name-calling or other pejorative language.[15]

■■■ The prosecutor's closing comments in this case violated several of these admonitions. First, the prosecutor misrepresented the evidence presented at trial by stating that Hunter was unemployed and by saying that the defense "basically conceded" that the drugs came from Hunter's car. Second, the prosecutor misused evidence that was introduced for a limited purpose. The evidence that Hunter possessed a license in the name of Anthony Jones and that his fingerprints were on file under the name Scott Brown was admitted for the limited purpose of establishing the two charges of criminal impersonation. Similarly, the fact that Hunter was under surveillance by a task force conducting a drug investigation was admitted only to explain to the jury how it happened that Hunter was pulled over. Nonetheless, the prosecutor used those facts for the prohibited purpose of suggesting Hunter's bad character and, therefore, his guilt on the drug charges.

The prosecutor's second, and more serious, set of improper comments relate to defense counsel's role and the reasonable doubt standard. This Court recently noted:

3. *Trump v. State,* 753 A.2d 963, 969 (Del. 2000).

4. *Williams v. State,* 803 A.2d 927, 928 (Del. 2002).

5. *See Walker v. State,* 790 A.2d 1214 (2002); *Morris v. State,* 795 A.2d 653 (Del.2002); *Williams v. State,* 796 A.2d 1281 (Del.2002); *Williams v. State,* 803 A.2d 927 (Del.2002).

6. *Bennett v. State,* 164 A.2d 442, 446 (Del. 1960).

7. *Sexton v. State,* 397 A.2d 540, 544 (Del. 1979).

8. *Trump v. State,* 753 at 967.

9. *Clayton v. State,* 765 A.2d 940, 942 (Del. 2001).

10. *Morris v. State,* 795 A.2d 653 (Del.2002).

11. *Bowe v. State,* 514 A.2d 408 (Del.1986).

12. *Walker v. State,* 790 A.2d 1214 (Del.2002).

13. *Warren v. State,* 774 A.2d 246 (Del.2001).

14. *Williamson v. State,* 1998 WL 138697 (Del. 1998).

15. *Brokenbrough v. State,* 522 A.2d 851 (Del. 1987).

Although the prosecutor has wide latitude in summation, he or she may not employ argument to denigrate the role of defense counsel "by injecting his [or her] personal frustration with defense tactics."... [T]he prosecutor is expected to "refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel"....

\* \* \*

It is impermissible for a prosecutor to discredit defense counsel in front of the jury. Even subsequent jury instructions to rectify that type of error "may not ensure that [such] disparaging remarks have not already deprived the defendant of a fair trial." [16]

In his opening summation, the prosecutor touched on what would be the thrust of his rebuttal summation, when he closed with the comment, "The State suggests that based upon the evidence *you will not be fooled....*" Defense counsel then reviewed the evidence for the jury and argued that, on the possession with intent to deliver charge, the State did not meet its burden of proof beyond a reasonable doubt. In rebuttal, the prosecutor emphasized the State's view of the evidence and then said,

> "If [defense counsel] can cast some smoke and some dust in your eyes and you are confused about your job, then you may get hooked. And that is the defense's attempt to pursue their defense of a classic case of reasonable doubt. Don't be fooled, ladies and gentlemen...."

The prosecutor warned the jury not to be fooled again a few minutes later and then wound up his rebuttal by saying, "Lastly, classic defense [defense counsel] raises, reasonable doubt. If he can fool just one of you, that's all that is needed, just one." After Hunter's objection to this comment was sustained and the jury was instructed to disregard it, the prosecutor's next statement was, "If the defense attorney is successful in asserting this defense on reasonable doubt, then his client walks." Defense counsel again objected and the court told the prosecutor to confine himself to the evidence and move on.

■■■■ The prosecutor's comments were entirely improper. He denigrated the role of defense counsel by saying that defense counsel's job was to trick the jury into letting Hunter go free. He also strongly suggested that the reasonable doubt standard, itself, should be viewed with suspicion. By describing it as a "classic" defense that may "hook" an unsuspecting juror, the prosecutor was challenging the jury to reject reasonable doubt as the standard of proof. It is hard to imagine a more fundamental aspect of due process than the presumption of innocence and the requirement that no person be convicted except upon proof beyond a reasonable doubt. [17] Yet the prosecutor here would have the jury believe that reasonable doubt is the means by which clever defense attorneys enable guilty defendants to go free.

■■■■ The remaining challenges to the prosecutor's comments touch on well-traveled ground. Prosecutors may not mislead the jury about the State's burden of proof by suggesting that the jury would

---

16. *Walker v. State,* 790 A.2d at 1219—20 (citations omitted.).

17. *See In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("Lest there be any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

have to disbelieve the police witnesses in order to acquit. As this Court explained in *Fensterer v. State,*

> [t]here need be no perjury by the State's witnesses to acquit the defendant. Even if the jury believed the State's witnesses, it could still acquit the defendant if the evidence before it was insufficient to find the defendant guilty beyond a reasonable doubt. Or the jury could have serious doubts about the credibility of both sides; in that case, the State would have failed to satisfy the "beyond a reasonable doubt" standard. The jury is not required to choose between the State's and the defendant's version of the facts.[18]

This Court also has gone to some lengths to explain the problem with vouching for witnesses or expressing personal opinions. In *Brokenbrough v. State,* the Court relied on both the ABA prosecution standards and the Delaware Rules of Professional Conduct in condemning prosecutors' expressions of personal belief:

> [E]xpressions of personal beliefs by a prosecutor are a form of unsworn, unchecked testimony intended to exploit the influence of his office and undermine the *objective detachment* which should *separate* a lawyer from the cause which he argues.[19]

This prosecutor ignored both of these admonitions. He said, "If you don't believe the State Police, find [Hunter] not guilty." That comment impermissibly suggested to the jury that, in order to find Hunter not guilty, the jury would have to disbelieve the police witnesses. At another point in the summation, the prosecutor interjected his own view of the evidence by saying, in reference to defense counsel's argument

on criminal impersonation, "I can't quite buy that argument." Although the comment was short and probably not terribly effective, it was improper under settled Delaware standards.

█ Having found prosecutorial misconduct, the next step is to determine whether that misconduct requires reversal. In *Hughes v. State,* this Court adopted a three part test to evaluate prosecutorial misconduct: "the closeness of the case, the centrality of the issue affected by the (alleged) error, and the steps taken to mitigate the effects of the error."[20] Here, the trial court found, and we agree, that it was not a close case. Hunter was seen throwing something out of his car while being chased by police; the object was recovered almost immediately and it contained 14 small plastic bags of cocaine; and Hunter took the police on a high speed chase and then attempted to flee on foot. With respect to most of the improper comments identified above, the issues that were affected were not central to the case and, even without any steps to mitigate the errors, it would be difficult to say that the prosecutorial misconduct deprived Hunter of a fair trial. The comments about being "fooled" into acquitting Hunter because of the "classic defense" of reasonable doubt, by contrast, go to the very heart of any criminal trial. The trial court did respond to Hunter's objection by instructing the jury to disregard one of those comments, but others were not objected to and, thus, were not the subject of any limiting instruction.

If we were reviewing this issue on a "clean slate," it is not clear that we would conclude that the improper comments "were so prejudicial as to compromise the

---

18. 509 A.2d 1106, 1112 (Del.1986).

19. 522 A.2d at 858.

20. 437 A.2d 559, 571 (Del.1981) (quoting *Dyson v. United States,* 418 A.2d 127, 132 (D.C. 1980)).

fairness of the trial process."[21] But, unfortunately, we are reviewing what can only be described as a persistent pattern of prosecutorial misconduct. As the Court pointed out in 1987, "[a] repetition of the same type or category of errors adversely affects the integrity of the judicial process."[22] In this case, we find that the prosecutor's improper comments cover several of the specific categories of comment that have been prohibited in past decisions. Accordingly, we conclude that the integrity of the judicial process was compromised by the prosecutor's misconduct and that the convictions appealed from must be reversed.[23]

## B. Evidentiary Rulings

We will address Hunter's remaining claims briefly for guidance in the event of a new trial. Hunter argues that the trial court erred in admitting evidence that suggested prior criminal activity and in failing to instruct the jury as to the limited purpose for which the evidence was introduced. Specifically, he complains that the evidence of his fingerprints being on file with the FBI and the State fingerprint directory, as well as the evidence that Hunter possessed a driver's license in another name, was highly prejudicial since it suggested that Hunter has a criminal record. Similarly, Hunter argues that the fact that he was under police surveillance as part of a drug investigation was highly prejudicial and not necessary to explain how the police apprehended him.

This Court reviews evidentiary rulings for abuse of discretion,[24] and we find none. The trial court properly considered the probative value of the evidence as compared to its prejudicial effect and decided that the evidence was admissible. Although it is not clear that the surveillance evidence really was necessary to "set the stage" for the jury, this Court will not interfere with a trial court's appropriate exercise of discretion. Moreover, the trial court offered to give the jury a limiting instruction to help mitigate any prejudice, but Hunter never requested it. Accordingly, we find this claim to be without merit.

## C. Sufficiency of the Evidence

Finally, Hunter argues that there was insufficient evidence to support the jury's conviction on the charge of possession with intent to deliver cocaine. This claim was not presented to the trial court and will be reviewed for plain error.[25] An insufficiency of evidence claim must fail if "*any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[26] Here, two police officers who have specialized training and experience in narcotics investigations testified that the manner in which the cocaine was packaged (14 plastic bags, each containing a relatively small quantity) was consistent with the individual sale of each bag. That evidence, together with the large amount of cash

21. *Coyle v. State,* 1992 WL 397485 at 3 (Del. 1992).

22. *Brokenbrough v. State,* 522 A.2d at 864.

23. Hunter waived any claims concerning his traffic violations and related convictions because he did not present any argument as to those convictions. Accordingly, the convictions in Criminal Action Numbers IK99030005, 99030006, 99030007 & 99030009 are affirmed.

24. *Seward v. State,* 723 A.2d 365, 372 (Del. 1999).

25. *Monroe v. State,* 652 A.2d 560 (Del.1995).

26. *Robertson v. State,* 596 A.2d 1345, 1355 (Del.1991).

found on Hunter, and the testimony that Hunter threw the bag of cocaine out of his car while being chased by police, viewed in the light most favorable to the State, is sufficient to support a guilty verdict.

## Conclusion

Based on the foregoing, Hunter's convictions on the charges of tampering with physical evidence, possession with intent to deliver cocaine, maintaining a vehicle for keeping controlled substances, possession of drug paraphernalia, two counts of criminal impersonation, and refusal to provide pedigree information are REVERSED and this matter is remanded to the Superior Court for further action in accordance with this decision.