**Michael A. JUSTICE, Defendant Below–Appellant,**

v.

**STATE of Delaware, Plaintiff Below–Appellee.**

No. 280, 2007.

Supreme Court of Delaware.

Submitted: March 26, 2008.
Decided: May 14, 2008.

Charles E. Whitehurst, Jr., Esquire, and Adam Windett, Esquire (argued), of Charles E. Whitehurst, Jr., LLC, Dover, DE, for appellant.

Kevin M. Carroll, Esquire (argued), of the Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, JACOBS, and RIDGELY, Justices.

RIDGELY, Justice:

Defendant–Appellant Michael A. Justice was convicted, following a Superior Court jury trial, of two counts of Rape Fourth Degree, one count of Endangering the Welfare of a Child, and one count of Offi-

cial Misconduct. On appeal, Justice argues that the trial judge abused his discretion by denying his motion for a mistrial following a witness's statement about obtaining his date of birth from "the DEL-JIS Automated Criminal Justice System." At issue is whether the prosecutor's question and the detective's answer regarding DELJIS intentionally interjected a "prejudicial outburst" that warranted a mistrial. Although the prosecutor's question and the detective's answers could have been better phrased, we find that the trial judge's curative instruction rendered any error harmless beyond a reasonable doubt. There was no abuse of discretion by the Superior Court in denying the motion for a mistrial. Accordingly, we affirm.

## I.

Justice was employed with the Division of Family Services (DFS) as a family service specialist/assistant. S.H., a seventeen year old female who was in the custody of DFS, was assigned to Justice. The two had known each other for approximately one year. On December 29, 2005, Justice picked S.H. up from Delaware Guidance Services. According to S.H., Justice told her that he did not have any other appointments and asked whether she had anything to do. She said that she did not. Thereafter they drove to a liquor store and then to a Red Roof Inn where they drank alcohol, smoked marijuana and had sex.[1] Justice agreed that he had bought alcohol while she was still in the car and that he rented a Red Roof Inn motel room, but only after he dropped her off at the YMCA Women's Center in Wilmington. He denied ever having sex with S.H.

At Justice's trial, Detective Millard Greer of the Delaware State Police testified for the State. During his testimony, the prosecutor asked, "[T]hrough the course of your investigation, did you research the defendant's date of birth?" The detective answered, "I did through the DELJIS Automated Criminal Justice System." When the prosecutor asked his followup question, "And what is that?", defense counsel immediately objected.

At sidebar, defense counsel moved for a mistrial, and the following exchange took place:

THE COURT: Did he [the detective] get his information from motor vehicle records?

PROSECUTOR: Right.

THE COURT: Why did you say that? That is just stupid. DEFENSE COUNSEL: My position is—

THE COURT: Mistrial is denied, but I'm going to tell the jury to disregard it. Reask the question, and this time it better be an appropriate answer, or I will declare a mistrial.

The trial judge sustained the objection and instructed the jury as follows: "The jury will ignore the last answer to the source of Mr. Justice's date of birth, and the State will ask the question again, and it will be answered appropriately this time." The State asked permission to ask a leading question, which the trial judge granted, and asked, "Detective, isn't it true you received—you researched motor vehicle Delaware driver's license records of the defendant?" The detective answered yes, and testified that Justice's date of birth according to the driver's license was August 13, 1967.

1. S.H. testified that they went to a Motel 6 before going to the Red Roof Inn, but could not rent from Motel 6 because S.H. did not have an I.D. Justice agreed that S.H. was with him when he went to Motel 6 and that he was unable to rent a room there despite him telling the manager that S.H. was not with him and that he was only trying to get the room now and check in later.

Later, outside the presence of the jury, the trial judge explained the basis for his ruling. He believed that the Detective's answer "unfortunately interjected the potential false issue of whether the defendant had any criminal record history of any kind," but that the "cautionary instruction was given ... anywhere from 60 to 90 seconds after the testimony was given," which he believed sufficiently took care of any error. He also applied *Hughes v. State*[2] and *Hunter v. State*[3] and determined that a mistrial was not warranted. The jury convicted Justice of all charges, he was sentenced and this appeal followed.

## II.

 Justice argues that the Detective's "prejudicial outburst" and the prosecutor's "improper line of questioning" that followed it could not have been cured by a cautionary instruction, and therefore the trial judge should have granted a mistrial. We review the denial of a motion for a mistrial for abuse of discretion[4] because "the Superior Court is in a better position to measure the risk of prejudice from events at trial."[5] A mistrial is appropriate only when there are no meaningful or practical alternatives to that remedy or the ends of public justice would otherwise be defeated.[6] "Error can normally be cured by the use of a curative instruction to the jury, and jurors are presumed to follow those instructions."[7]

## A. The Prosecutor's Questions

 In *Baker v. State*,[8] we recognized that "[q]uestions alone can impeach. Apart from their mere wording, through voice inflections and other mannerisms of the examiner—things that cannot be discerned from the printed record—they can insinuate; they can suggest; they can accuse; they can create an aura in the courtroom that the trial judge can sense but about which we could only speculate."[9] Because "the prosecutor has a special obligation to avoid improper suggestions, insinuations, and, especially, assertions of personal knowledge,"[10] the role of the trial judge in analyzing the comment or conduct is even more important.[11] "If defense counsel raised a timely and pertinent objection to prosecutorial misconduct at trial, or if the trial judge intervened and considered the issue *sua sponte*, we essentially review for 'harmless error.' "[12]

 "The first step in the harmless error analysis involves a *de novo* review of the record to determine whether misconduct actually occurred. If we determine that no misconduct occurred, our analysis

2. 437 A.2d 559 (Del.1981).

3. 815 A.2d 730 (Del.2002).

4. *Chambers v. State*, 930 A.2d 904, 909 (Del. 2007); *Guy v. State*, 913 A.2d 558, 565 (Del. 2006); *Smith v. State*, 913 A.2d 1197, 1220 (Del.2006); *Taylor v. State*, 827 A.2d 24, 27 (Del.2003).

5. *Guy*, 913 A.2d at 565 (citation omitted).

6. *Id.*; *Chambers*, 930 A.2d at 909.

7. *Guy*, 913 A.2d at 565–66.

8. 906 A.2d 139 (Del.2006).

9. *Id.* at 152 (quoting *Elmer v. Maryland*, 353 Md. 1, 724 A.2d 625, 632 (1999)).

10. *Id.* (quoting *Trump v. State*, 753 A.2d 963, 968 (Del.2000)).

11. *See id.* at 155 ("Any time a trial prosecutor asks a question for which he does not have a good faith factual predicate, we agree that the trial judge will generally be in the best position to assess the potential prejudice stemming from that question. Moreover, in most, if not all, cases, a general instruction, like the one given in this case, might suffice. Finally, we do customarily presume that the jury followed the trial judge's instruction.").

12. *Id.* at 152.

ends there." [13] As explained in *Baker*, if we determine that the prosecutor did engage in misconduct, we must determine whether the improper comments or conduct prejudicially affected a defendant's substantial rights by applying the three factors of the *Hughes* test.[14] Where the misconduct "fails" the *Hughes* test and otherwise would not warrant reversal, we apply *Hunter* to determine whether the "prosecutor's statements or misconduct are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process." [15] Here, the prosecutor asked whether the detective researched the defendant's date of birth and then asked for an explanation about the DELJIS Automated Criminal Justice System.

While these are not necessarily the types of questions that imply "the existence of a factual predicate for which a good faith belief is lacking," [16] they were nevertheless inartfully worded and risked the elicitation of prejudicial evidence. Nothing in the record, however, implies that the prosecutor knew that the detective would answer his question in a way

that the trial judge found "just stupid." Still, the record does imply a lack of adequate preparation by the prosecutor for trial.[17] The prosecutor proffered that he expected the answer to call for the motor vehicle records, not anything about the "DELJIS Automated Criminal Justice System." Even so, a more direct line of questioning could have focused the witness's responses and avoided any prejudice arising from the introduction of the "DELJIS Automated Criminal Justice System" into the proceeding.[18] Although the line of questioning was clearly subject to the trial judge's criticism, we do not find misconduct under *Baker* that triggers the *Hughes* or *Hunter* tests of the prosecutor's conduct.

### B. The Witness's Answer

■ The open-ended nature of the prosecutor's question—and we infer, his insufficient trial preparation—led the detective to give an answer that introduced the "DELJIS Automated Criminal Justice System" into the trial. The defense made a timely objection and argued that the exchange could be viewed as implying that

---

**13.** *Id.* at 148.

**14.** *Id.* at 148–49. Those factors are: (1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error. *See id.; Hughes v. State*, 437 A.2d 559, 571 (Del. 1981).

**15.** *Baker*, 906 A.2d at 149; *Hunter v. State*, 815 A.2d 730, 732 (Del.2002).

**16.** *Baker*, 906 A.2d at 152 (quoting *ABA Criminal Justice Standards, Prosecution Function*, Standard 3–5.7(d), available at http://www.abanet.org/crimjust/standards/pfunc_toc.html). *See, e.g., id.* at 153 (finding that the prosecutor's question of whether the defendant had any "familiarity with sex offenses" was phrased "so as to imply clearly that he had a factual basis to conclude that the defendant had some involvement with sex offenses before he committed the ones for which he was on trial," was "egregious misconduct"

when the prosecutor admitted having no good faith basis for asking it); *Weddington v. State*, 545 A.2d 607, 610 (Del.1988) (finding that the prosecutor impermissibly injected race into the trial when he questioned the defendant about "loose white women" when he did not have a factual basis for doing so).

**17.** We recognize the caseload burdens of both prosecutors and defense counsel. While these circumstances may explain an unprepared direct examination and the response of a witness, they cannot excuse them.

**18.** For example, the prosecutor could have combined his pre- and post-objections questions by directing the witness to answer whether the defendant had a driver's license and whether he researched the motor vehicle's records to determine the defendant's date of birth.

the defendant had a criminal record. The Superior Court disagreed, finding that the answer did not warrant a mistrial.

In *Pena v. State*,[19] we explained the standard of review for a witness's outburst or nonresponsive answer: "We review the denial of a motion for mistrial after an unsolicited response by a witness for abuse of discretion or the denial of a substantial right of the complaining party. In doing so, we consider the nature and frequency of the conduct or comments, the likelihood of resulting prejudice, the closeness of the case and the sufficiency of the trial judge's efforts to mitigate any prejudice in determining whether a witness's conduct was so prejudicial as to warrant a mistrial."[20]

The trial judge, in analyzing the detective's response, applied *Hughes v. State*[21] and *Hunter v. State*[22] and determined that a mistrial was not warranted.[23] We agree with the trial judge that the answer mentioning the "DELJIS Automated Criminal Justice System" potentially interjected a false issue of criminal history. That error was rendered harmless beyond a reasonable doubt in this case.[24] A curative instruction was given *and* the officer clarified that the records came from motor vehicle records. A trial judge's prompt curative instructions "are presumed to cure error and adequately direct the jury to disregard improper statements."[25] A curative instruction is a meaningful or practical alternative to declaring a mistrial, and juries are presumed to follow the instruction.[26] In context, the curative instruction and the clarification by the witness was a practical alternative to granting a mistrial.[27] Accordingly, the trial judge did not abuse his discretion in denying Justice's motion for a mistrial.

### III. Conclusion

The judgment of the Superior Court is **AFFIRMED.**

---

19. 856 A.2d 548 (Del.2004).

20. *Id.* at 550–51 (citation omitted); *accord Taylor v. State*, 690 A.2d 933, 935 (Del.1997).

21. 437 A.2d 559 (Del.1981).

22. 815 A.2d 730 (Del.2002).

23. We recognize, as does the State in its brief, that the analysis under *Pena* largely aligns itself with the factors of both *Hughes* and *Hunter*. The fact that the trial judge called his analysis by a different name does not change the fact he applied the correct factors toward the witness's response here.

24. *See Van Arsdall v. State*, 524 A.2d 3, 10 (Del.1987).

25. *Pena*, 856 A.2d at 551.

26. *See id.* at 551–52; *Fuller v. State*, 860 A.2d 324, 328–29 (Del.2004).

27. The parties have agreed that driver's license records, unrelated to criminal history, are available through the DELJIS system that is used by law enforcement. A more complete jury instruction could have explained this to the jury. In future cases, prosecutors should structure their questions and prepare their witnesses to avoid the risk of prejudice from an unnecessary reference to the DELJIS Automated Criminal Justice System.