# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAVON CANNON, | § | No. 513, 2016 |
| Defendant Below,<br>Appellant, | §<br>§<br>§ | Court Below: Superior Court of<br>the State of Delaware |
| v. | §<br>§ | ID No. 1505020908A (N) |
| STATE OF DELAWARE, | §<br>§ | |
| Plaintiff Below,<br>Appellee. | §<br>§ | |

Submitted: May 3, 2017
Decided: June 19, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## ORDER

On this 19th day of June 2017, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The Appellant, Javon Cannon, appeals from a Superior Court jury verdict finding him guilty of Reckless Endangering in the First Degree, Possession of a Firearm During the Commission of a Felony, Disregarding a Police Signal, and several traffic offenses. He makes one claim on appeal. He contends that the prosecutor engaged in prejudicial misconduct during closing and rebuttal arguments which entitles him to a new trial.

(2) The facts are that on May 22, 2015, Detective Peter Stewart of the New Castle County Police Department was conducting surveillance in the Sparrow Run community as a member of the FBI Violent Crimes Task Force. As he was driving through the neighborhood in an unmarked, undercover minivan, a four-wheeler drove toward him at a high rate of speed. It was followed by a silver Ford Taurus, which in turn was followed by another four-wheeler. The Taurus came within three feet of the detective's vehicle, and the "mirrors almost hit each other."[1] Detective Steward testified that he estimated the Taurus' speed at thirty-five to forty miles per hour in a twenty-five mile per hour zone. The detective recognized Cannon, whom he knew, as the driver of the Taurus as the vehicle passed by him. He then notified other officers in the area that the Taurus was leaving the Sparrow Run community.

(3) Officer Donald Fisher, a member of the New Castle County Police Mobile Enforcement Team, heard Detective Stewart's call on the radio and observed the Taurus pass him in the opposite lane on Salem Church Road. Officer Fisher turned around and followed Cannon into the Salem Woods community. As he was following Cannon, Officer Fisher observed him pass a vehicle on the left at a stop sign, run the stop sign, and make a left turn onto Jaymar Boulevard. When the officer reached the intersection, he activated his vehicle's lights and siren and continued to pursue Cannon's vehicle. Cannon made his way out of the Salem Woods

---

[1] App. to Appellant's Opening Br. at 19.

2

neighborhood, turned onto Old Baltimore Pike towards Route 273, and accelerated rapidly. Officer Fisher did not continue the pursuit.

(4) Officer Bradley Landis, also of the Mobile Enforcement Team, was heading toward Salem Woods in response to Detective Stewart's initial call when Officer Fisher radioed that Cannon was fleeing. Officer Landis arrived at the neighborhood and was flagged down by someone there because there was a semi-automatic handgun with an extended magazine laying in the westbound lane of Jaymar Drive. After the officers secured the scene, Officer Landis collected the gun from the roadway. He noted that the right side of the gun was scratched "as if it had slid across the blacktop," the magazine was broken into several pieces, and twenty-two rounds of nine-millimeter ammunition were scattered across the roadway.[2]

(5) The police determined that Keeneisha Washington, a friend of Cannon's, had rented the Taurus and lent it to Cannon. Eventually, the police located the Taurus in a neighborhood near the Community Plaza Shopping Center. Cannon was arrested on August 20, 2015. He was indicted on charges of Reckless Endangering in the First Degree, Possession of a Firearm During the Commission of a Felony, two counts of Possession of a Firearm by a Person Prohibited ("PFBPP"), two counts of Possession of Ammunition by a Person Prohibited ("PABPP"), Disregarding a

---

[2] *Id.* at 32-33.

3

Police Signal, and several other traffic violations.[3] The PFBPP and PABPP charges were severed prior to trial.[4] A two-day trial on the remaining charges commenced on May 24, 2016. The jury found Cannon guilty on all counts.

(6) Cannon contends that the prosecutor committed prosecutorial misconduct twice during closing arguments, once when he commented to the jury during his closing that he was "not going to lie" about DNA evidence, and again in rebuttal when he started to perform a demonstration with the ammunition. In each instance, defense counsel made a timely objection and therefore this Court will "essentially review for 'harmless error.'"[5]

(7) Under the harmless error analysis, the Court will first conduct a *de novo* review of the record to determine whether misconduct took place.[6] If we conclude there was no misconduct, our analysis ends.[7] If we do determine that the prosecutor engaged in misconduct during trial, we then, under the second step of the analysis, "determine whether the [] misconduct prejudicially affect[ed] [the] defendant's

---

[3] The theory of the reckless endangering count is that Cannon recklessly endangered other motorists and pedestrians by his speeding and running a stop sign in a residential development.

[4] After his jury trial, which is the subject of this appeal, Cannon had a bench trial on the severed PFBPP and PABP charges. He was found not guilty there because the Superior Court judge found that there was insufficient evidence that Cannon possessed the gun and ammunition found on the street. App. to Appellant's Opening Br. at 93-94. Cannon makes no insufficiency of evidence claim in this appeal.

[5] *Baker v. State*, 906 A.2d 139, 148 (Del. 2006).

[6] *Id.*

[7] *Id.*

substantial rights"[8] under the three-factor *Hughes*[9] test. Under *Hughes*, "'[t]he decisive factors are the closeness of the case, the centrality of the issue affected by the (alleged) error, and the steps taken to mitigate the effects of the error.'"[10]

> Where the prosecutorial misconduct "fails" the *Hughes* test . . . and otherwise would not warrant reversal, we examine *Hunter* – the third step in the harmless error analysis for prosecutorial misconduct – considering whether the prosecutor's statements or misconduct are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process.[11]

(8) Cannon's first complaint lies with the prosecutor's statement that he was "not going to lie" to the jury about the weakness of DNA evidence linking Cannon to the gun. During closing arguments, the prosecutor stated the following:

> Finally ladies and gentlemen, we have the DNA evidence, and you heard that there was DNA on the gun that was not the defendant's, never in dispute. I believe that was addressed in defense counsel's opening, as well, no dispute with the State.
>
> However, there is also DNA[, to] paint the fully painted picture[,] that does include the defendant. Is it a strong inclusion? No, it's not. I am not going to stand up here lie to you and try to paint it any other way, it is not a strong inclusion.[12]

---

[8] *Id.* at 149.
[9] *Hughes v. State*, 437 A.2d 559, 571 (Del. 1981).
[10] *Id.* (quoting *Dyson v. United States*, 418 A.2d 127, 132 (D.C. 1980)).
[11] *Jones v. State*, 2016 WL 7103407, at **2 (Del. Dec. 5, 2016).
[12] App. to Appellant's Opening Br. at 55.

(9) At that point, Cannon's defense counsel objected to the prosecutor's statement that he would not lie to the jury, and moved for a mistrial. The prosecutor responded by stating that he did not intend to bolster evidence or his own credibility with his statement, and "[i]f anything, it was to acknowledge as a shortcoming in the State's case that was addressed by defense counsel in opening."[13] The Superior Court denied the motion for mistrial and issued the following instruction to the jury: "All right, ladies and gentlemen, I'm going to instruct you at this time that you are to disregard any statements that were made by counsel about truth or the falsity of any statements that are made by any attorney in this case."[14]

(10) Cannon contends that it was improper for the prosecutor to comment on his own truthfulness. However, the prosecutor made the statement to acknowledge a weakness in the State's case, not to express an opinion on the truthfulness of any evidence relevant to Cannon's guilt. The comment does not rise to the level of prosecutorial misconduct. Additionally, even if it did, the Superior Court issued a curative instruction immediately after the prosecutor's statement, which cured any prejudice.

(11) Cannon's second complaint lies with a demonstration that the prosecutor started to conduct during his closing rebuttal. The prosecutor set a bullet on his

---

[13] *Id.* at 56.
[14] *Id.*

counsel table and began to blow on the bullet. He then told the jury, "I am blowing on that bullet making it roll with minimal effort, admittedly not gravity, [it] is a different surface, minimal effort if even one car had passed after the defendant passed--."[15] Defense counsel objected to the prosecutor's display and at side bar argued that the demonstration was inflammatory. The prosecutor argued that his display was for the purpose of demonstrating that the bullets would have scattered even more if another car had passed. The Superior Court noted that the State did not present any evidence to allow the jury to make such a deduction, and therefore instructed him to stop and move on.

(12) It is not proper for an attorney to attempt to create evidence during a closing argument. As the trial judge noted, the State did not produce any evidence concerning any movement of the bullets on the road. However, we are satisfied that the interruption of the demonstration and the sustaining of the defense objection eliminated any prejudice that might otherwise have occurred. The movement of the bullets was not central to the case, and the trial judge immediately ordered the State to move on. Under *Hughes*,[16] the prosecutor's display was harmless error. Under *Hunter*,[17] the prosecutor's action is not repetitive misconduct.

---

[15] *Id.* at 60.

[16] 437 A.2d at 571.

[17] *Hunter v. State*, 815 A.2d 730, 733 (Del. 2002).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is **AFFIRMED.**

BY THE COURT:

_____
Justice