# IN THE SUPREME COURT OF THE STATE OF DELAWARE

JAQUAN S. BROOKS, §
§ No. 281, 2022
    Defendant Below, §
    Appellant, §
§ Court Below: Superior Court
    v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. 2008000887(K)
§
    Appellee. §

Submitted: May 17, 2023
Decided: May 31, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, Justices.

## **ORDER**

On this 31st day of May 2023, it appears to the Court that:

(1)    On August 2, 2022, Delaware State Police Trooper Pendleton stopped a car driven by Jaquan Brooks for failing to signal while changing lanes. When the police officer first approached the vehicle, he did not see that Brooks had a firearm. As Brooks leaned across his vehicle to retrieve his insurance and registration documents, the officer saw the handle of a firearm in Brooks' left pants pocket. At first, Books claimed he had a permit to carry a concealed weapon but then admitted that he did not have such a permit.[1]

---

[1] App. to Opening Br. at A29 (Pendleton Trial Tr.).

(2)     A Kent County grand jury indicted Brooks for Carrying a Concealed Deadly Weapon ("CCDW") and other traffic-related charges.  At trial, the jury had to decide whether the firearm was concealed for the purposes of the CCDW charge. Under Delaware law, a citizen can "open carry" a firearm[2] but must have a permit to carry a concealed weapon.[3]   The jury instructions explained that "[a] deadly weapon is 'concealed' if it is located on or about the person carrying so as not to be visible to an individual who came close enough to see it by ordinary observation. Absolute invisibility is not required."[4]

(3)     In closing arguments, the prosecutor referred to the instructions and addressed the jury as follows:

> Now, the judge is going to instruct you on all the law that applies.  The judge will instruct you that it doesn't matter whether the firearm was loaded or unloaded.   Essentially, it doesn't matter whether the defendant took any other special steps to conceal it.

> What does matter – and I'll show you from the instructions.  So it says that a deadly weapon is concealed if it is located on or about the person carrying it so as not to be visible to an individual who came close enough to see it by ordinary observation.

> So when Trooper Pendleton came up to him, that's an ordinary observation. And standing right there he couldn't see it.  He couldn't see it because it was in his pocket.  He couldn't see it because his arm was covering it.  That's sufficient. *It's certainly not open carrying.*[5]

---

[2] *See Doe v. Wilmington Hous. Auth.*, 88 A.3d 654, 663 (Del. 2014) ("Delaware is an 'open carry' state."); Del. Const., art. I, § 20.
[3] *See* 11 *Del. C.* §§ 1441–42.
[4] App. to Answering Br. at B21 (Closing Jury Instructions).
[5] App. to Opening Br. at A55 (State's Closing Argument) (emphasis added).

(4)     Defense counsel did not object to the prosecutor's closing argument. The jury found Brooks guilty of all charges. The Superior Court sentenced Brooks to eight years at Level V incarceration suspended for two years at Level III supervision.

(5)     On appeal, Brooks claims prosecutorial misconduct based on the prosecutor's comment "[i]t's certainly not open carrying." Brooks argues that the prosecutor's comment was a clear misstatement of law that misled the jury. He contends that the trial judge should have intervened immediately and given a curative instruction to the jury.

(6)     Defense counsel did not raise an objection at trial to the challenged statement. Thus, this Court reviews a prosecutorial misconduct claim for plain error.[6] Plain error review in this instance involves three steps. The first step is a *de novo* review of the record to determine whether misconduct occurred.[7] "If this Court finds no misconduct, the analysis ends."[8] If there is a finding of misconduct, we proceed to the second step to consider whether "the error complained of [was] so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[9] Review is "limited to material defects which are apparent on the

---

[6] *See Morales v. State*, 133 A.3d 527, 529 (Del. 2016).
[7] *See id.* at 529–30.
[8] *Id.* at 530.
[9] *Id.* (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

face of the record[;] which are basic, serious, and fundamental in their character[;] and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[10]   A finding of plain error at this stage requires reversal.[11] Otherwise, this Court proceeds to the third and final step to consider whether "the prosecutor's statements are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process."[12]

(7)    Brooks argues that the prosecutor misstated the law about whether a firearm is concealed.[13]  Without a curative instruction from the trial judge, Brooks argues, the prosecutor's misstatement was likely to have adversely influenced the jury on the key issue of the concealed status of the firearm and therefore denied him a fair trial.

(8)    The State acknowledges that misstatements of the law can rise to the level of misconduct but counters that a prosecutor can comment on evidence and can make reasonable inferences that can be drawn from evidence.[14]  Such statements are permissible, the State argues, because the prosecutor "should not be confined to a

---

[10] *Id.* (quoting *Wainwright*, 504 A.2d at 1100).
[11] *Id.*
[12] *Id.* (quoting *Hunter v. State*, 815 A.2d 730, 733 (Del. 2002)).
[13] *See* Opening Br. at 6.
[14] *See* Answering Br. at 8–9, 14; *Escalera v. State*, 187 A.3d 1249, at *2 (Del. 2018) (TABLE) ("Prosecutors are allowed to 'comment on the evidence and the reasonable inferences therefrom,' provided they stay within the bounds of 'the facts of the case' and do not 'misstate the evidence or mislead the jury as to the inferences it may draw.'" (first quoting *Hughes v. State*, 437 A.2d 559, 573 (Del. 1981) then quoting *Hooks v. State*, 416 A.2d 189, 206 (Del. 1980) and then quoting *Daniels v. State*, 859 A.2d 1008, 1011 (Del. 2004)).

repetition of the evidence presented at trial."[15] The State characterizes the statement "[i]t's certainly not open carrying" as an inference "flow[ing] directly from the record evidence and the jury instructions."[16] In any event, the State argues that any alleged prejudicial impact was mitigated by the trial judge's caution to the jury that closing statements are not evidence and the trial judge's instructions to the jury on the applicable law following the parties' closing statements.[17]

(9) After considering the parties' arguments, we conclude that the prosecutor's statement is an inference drawn from the evidence rather than a statement of the law. When referring to the jury instructions, the prosecutor recited accurately the instruction regarding concealment and reiterated that the trial judge would be the authoritative source on the law. He did not comment further on the law itself.[18] Instead, he recounted the evidence, and highlighted that the weapon was not visible at first to Trooper Pendleton, "a person who was trained to seek firearms during traffic stops," and that it was in Brooks' pocket and covered by his arm.[19] Brooks' admission that he did not have a permit to carry a concealed weapon further

---

[15] *Hooks*, 416 A.2d at 204.
[16] Answering Br. at 13.
[17] *See* App. to Answering Br. at B21, B28 (Closing Jury Instructions) ("An attorney may argue all reasonable inferences from evidence in the record, however, what an attorney states in opening or closing argument is not evidence. Arguments are merely made to assist you in organizing the evidence and to suggest the logical conclusion that may be reached from the evidence presented.").
[18] *See Money v. State*, 957 A.2d 2 (Del. 2008) (TABLE); 2008 WL 3892777 at *2 ("Counsel who misstate the law when addressing the jury run the needless risk of a new trial when their misstatements are reviewed on post-trial motions or appeal.").
[19] Answering Br. at 13.

bolstered the prosecution's case. A logical inference from these facts was that Brooks was "certainly not open carrying."[20]

(10) Brooks relies on *Money v. State*, where the prosecutor made a clear misstatement about the process for the jury to consider lesser-included offenses.[21] *Money* is not helpful here because there was no misstatement of the law. And, in any event, the trial judge in *Money* correctly advised the jury on the applicable law, allowing this Court to uphold the defendant's conviction.[22]

(11) Brooks does not directly allege other forms of misconduct, but he does cite various cases that allude to other types of misconduct, such as prosecutorial vouching for the credibility of a witness and improper comments on a defendant's silence or character.[23] The record here does not show that the prosecutor engaged in such conduct. As there was no prosecutorial misconduct, we need not proceed further in the plain error analysis.

---

[20] *See Benson v. State*, 105 A.3d 979, 984 (Del. 2014) (finding prosecutor's reference to the large caliber of the weapon defendant used in a murder case as "circumstantial evidence of [defendant's] intangible intent to kill" to be a permissive logical inference); *Burns v. State*, 76 A.3d 780, 790 (Del. 2013) (finding prosecutor's statement to jury in a rape and sexual abuse case that "[defendant] did this" to be "an inference that could have logically resulted from the evidence.").
[21] *Money*, 2008 WL 3892777 at *2 ("[T]he prosecutor clearly misstated how the jury should consider the charges in their deliberations on lesser included offenses.").
[22] *See id.* at *3.
[23] *See* Opening Br. at 4–5; *see, e.g.*, *Williams v. State*, 803 A.2d 927, 929–31 (Del. 2002) (finding prosecutor's characterization of defendant as a liar and bolstering the credibility of the State's witnesses to be improper); *Bowe v. State*, 514 A.2d 408, 411 (Del. 1986) (finding prosecutor's commenting on defendant's pretrial silence to be improper).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice