DANNY CLARK,[1] Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 585, 2007.
Supreme Court of Delaware.
Submitted: August 6, 2008.
Decided: August 26, 2008.
Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

ORDER
JACK B. JACOBS, Justice.
This 26th day of August 2008, upon consideration of the briefs on appeal, the parties' supplemental memoranda, and the record below, it appears to the Court that:
1. Danny Clark ("Clark"), the defendant-below, appeals from a Family Court order adjudicating him delinquent of one count of Attempted Rape in the Second Degree and one count of Unlawful Sexual Contact in the Second Degree. Clark was sentenced and ordered to register as a sex offender. On appeal, Clark claims that the trial court erred by: (1) denying his motion for a judgment of acquittal on the charge of Attempted Rape in the Second Degree; and (2) ordering him to register as a sex offender. We conclude that the Family Court committed no legal error and affirm.
2. The victim, Casey B. ("Casey"), her younger brother (Christian), and their parents resided in a two story apartment in Laurel, Delaware. Clark lived next door with his parents and his siblings. At the time of the events, Casey was 15 years old, Christian was 13 years old, and Clark was 13 years old.
3. According to Casey, on March 27, 2007 she walked home from school with Christian. At 3:00 or 3:30 p.m., Casey was in the kitchen talking to her boyfriend on the telephone, and Christian was playing an online game on the computer in their parents' room. While Casey was in the kitchen, she noticed Clark, who was standing in front of the back door of his house. Because she could not hear what Clark was saying, Casey opened the kitchen side door and let Clark in, assuming that he wanted to play with her brother. Clark and Christian were about the same age and often played football or other games together after school.
4. After entering the kitchen, Clark told Casey that he "liked her" and tried to kiss her. As Clark was advancing towards her, Casey kept backing off, asked Clark to stop, and told him that she had a boyfriend and was not "that kind of person." This episode lasted about three minutes. Casey then proceeded to show Clark the door to her parents' bedroom and told him that "Christian's in the back." Christian testified that he heard his sister's comment, but that Clark did not come inside the parents' bedroom.
5. Casey testified that after showing Clark the door to the parents' bedroom, she turned around, walked to her own bedroom, and closed the door. Not long thereafter, Clark entered her bedroom without knocking, shut the door, walked up to Casey, told her that "he just wanted it and needed it," and tried to kiss her. Casey turned her head away and then saw Clark unbutton his pants. Casey further testified that Clark "pushed [her] a little bit," "set [her] against the bed," "got on top of [her] and was . . . trying to go up [her] shirt, and trying to unbutton [her] pants." Casey "told [Clark to] stop over and over again, but he wouldn't stop." Clark touched Casey's breast over her bra. She could "feel his hand going down [her] pants," but he did not get underneath her bra or into her pants, and did not touch her vagina.
6. Casey estimated that ten to fifteen minutes had passed since Clark had entered her bedroom when she "found [the] strength to push him off of [her], and ran for [her] bedroom door." Casey then dragged Clark by the arm out of her bedroom, pulled him through the living room, past her parents' bedroom and into the kitchen, and pushed him out of the apartment. Clark told Casey that he would be back.
7. After physically removing Clark from the apartment, Casey called her boyfriend and simultaneously told the boyfriend and Christian what had happened. She was crying and told Christian to lock the doors and the windows, and not to talk to or let Clark in the house if he returned. While Casey was still on the telephone with her boyfriend, five minutes later she and her brother heard a knock at the kitchen door. Christian checked the door, and saw "someone" running inside Clark's house. Although Casey's parents arrived home shortly after the incident, she chose not to mention anything to them that evening.
8. The next day Casey went to school, where she told her best friend and another friend about the incident. Near the end of the school day, Casey, encouraged by her friend, went to the school nurse and told the nurse that Clark had tried to sexually assault her. Casey then went back to class, but could not stop crying. The school nurse followed the protocol for reporting this type of incident. Soon thereafter, Casey was called back to the school nurse's office, where she was interviewed by a detective and another school official. Later that day, Casey also reported the incident to her parents. The next day she went to the Child Advocacy Center, where she was interviewed.[2]
9. On April 25, 2007, the State filed a Petition Alleging Delinquency in the Family Court, charging Clark with Attempted Rape in the Second Degree[3] and Unlawful Sexual Contact in the Second Degree.[4] A one day bench trial was held before a Family Court judge. At the conclusion of the State's case, Clark moved for a judgment of acquittal on the charge of Attempted Rape in the Second Degree. His motion was denied. Clark then presented an alibi defense, and testified that, after returning home from school, he watched television with his brother the entire afternoon and never left his house. Clark's version of the events was supported by testimony from his father, brother, and younger sister.
10. At the end of the trial, Clark was adjudicated delinquent on both counts. He was sentenced to be committed to the custody of the Department of Services, Youth and Their Families for placement at the Ferris School for an indeterminate period, suspended for two years at Level III probation. Additionally, the trial court ordered Clark to register as a sex offender and assigned him to Tier III. Clark then filed this appeal, which implicates only the charge of Attempted Rape in the Second Degree.
11. The first issue is whether the Family Court erred in denying Clark's motion for a judgment of acquittal by rejecting Clark's claim that the evidence was insufficient to convict him of Attempted Rape in the Second Degree. To convict a defendant of Attempted Rape in the Second Degree, the State must prove beyond a reasonable doubt that the defendant "[i]ntentionally [attempted to] engage[e] in sexual intercourse with [the victim], . . . without the victim's consent."[5] "We review de novo a trial judge's denial of a motion for a judgment of acquittal to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of a crime."[6] "It is now well established that a victim's testimony alone, concerning alleged sexual contact, is sufficient to support a guilty verdict if it establishes every element of the offense charged."[7]
12. To reiterate, Clark claims that the State's evidence was insufficient to establish that he attempted to engage in sexual intercourse with Casey "without her consent," which is an element of the crime of Attempted Rape in the Second Degree that the State must prove beyond a reasonable doubt.[8] Clark argues that the evidence shows only that he attempted to engage in consensual sexual intercourse with Casey, which is not a crime. This specific argument was not "fairly presented to the trial court," as Supreme Court Rule 8 requires.[9] However, "in the interests of justice," we review Clark's claim because it is intertwined with his contention (which was the basis for his motion for a judgment of acquittal) that the State's evidence is insufficient to establish that his "intention" was to engage in nonconsensual "sexual intercourse."
13. Under the statute, an act is "without consent" where:
(1) The defendant compelled the victim to submit by any act of coercion as defined in §§ 791 and 792 of this title, or by force, by gesture, or by threat of death, physical injury, pain or kidnapping to be inflicted upon the victim or a third party, or by any other means which would compel a reasonable person under the circumstances to submit. It is not required that the victim resist such force or threat to the utmost, or to resist if resistance would be futile or foolhardy, but the victim need resist only to the extent that it is reasonably necessary to make the victim's refusal to consent known to the defendant . . . [10]
14. At the trial, Casey admitted that she did not scream or yell during the incident, that Clark did not threaten to injure her, did not punch or hit her, and did not tear or remove her clothes. It is also undisputed that no marks were left on Casey's body and that the State did not present any physical evidence of non-consensual intercourse at trial. But, from this it does not follow that the State failed to prove beyond a reasonable doubt the "without consent" element of the crime.
15. Casey's testimony, which the trier of fact believed, establishes beyond a reasonable doubt that Clark attempted to "compe[l] [her] to submit by . . . coercion . . . or by force, by gesture, or by threat . . . or by any other means which would compel a reasonable person under the circumstances to submit," as required by 11 Del. C. § 761.[11] Clark entered into her bedroom uninvited, shut the door behind him, "pushed" her, "set [her] against the bed," and "got on top of [her]." Casey repeatedly refused to consent to engage in sexual intercourse by telling Clark to stop "over and over again" while physically resisting his advances. Further, Casey had previously stopped Clark from kissing her while in the kitchen, had told him that she had a boyfriend and that she was not "that kind of person." That ten to fifteen minutes passed before Casey "found [the] strength to push him off of [her]" only bolsters the finding that Clark attempted to compel her to submit to his desire to engage in sexual intercourse. Clark's response  that Casey was older than he and was sufficiently strong to remove him from the apartment  raised a fact issue that the trier of fact resolved against Clark.
16. Clark next claims that the State presented insufficient evidence that he engaged in "substantial steps" towards committing the crime "attempted" (Rape in the Second Degree).[12] As noted, Clark argues that the evidence shows only that he took substantial steps to engage in "consensual" sexual intercourse with Casey (which is not a crime). For the reasons stated above, Clark's argument lacks merit. To the extent Clark claims that the State failed to demonstrate that he took substantial steps towards engaging in "sexual intercourse" with Casey, that argument, too, must be rejected.
17. A "substantial step" is "an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which the defendant is charged with attempting."[13] Here, Casey testified that Clark told her that "he just wanted it and needed it," and tried to kiss her, and then unbuttoned his pants. Casey further testified that Clark then got on top of her on the bed, tried to unbutton her pants and go up her shirt, touched her breast over her bra, and also that she felt Clark's penis on her leg and his hand going down her pants. That testimony leaves no reasonable doubt that Clark intended to engage in sexual intercourse with Casey. As explained above, the State also satisfied its burden of proving that such sexual intercourse would have been "without consent." Therefore, the State proved beyond a reasonable doubt all the required elements of Attempted Rape in the Second Degree, and the Family Court did not err in denying Clark's motion for a judgment of acquittal.
18. Clark next argues that the requirement to register as a sex offender under 11 Del. C. §§ 4120 and 4121 was improperly applied to him as a juvenile offender, because lifetime registration does not serve the best interests of a child and, therefore, conflicts with 10 Del. C. §§ 902 and 1002. This argument presents a question of statutory construction that we review de novo.[14]
19. "All fifty states, the District of Columbia, and the federal government have adopted some form of statutory scheme commonly referred to as Megan's Law. The term `Megan's Law' encompasses two separate types of statutory requirements: sex offender registration and community notification. Like many other states, Delaware's statutory scheme includes both registration and notification provisions. [. . .] [Delaware's] approach `requires that [sex] offenders satisfying statutory, offense-related criteria be subject to registration and notification, affording offenders no right to a prior hearing on the eligibility determination.'"[15] Section 4120 of Title 11 of the Delaware Code deals with the registration requirement. Section 4121 establishes the notification requirement.
20. Clark does not contend that those requirements are unconstitutional. Rather, he contends that these requirements should not have been applied in his case (i.e., to a juvenile adjudicated delinquent), because they conflict with 10 Del. C. §§ 902 and 1002. Clark does not, nor could he, dispute, that Sections 4120 and 4121, on their face, apply to both juvenile and adult sex offenders.[16]
21. 10 Del. C. § 902, which focuses on the purpose for which the Family Court was established in 1971, states:
The [Family] [C]ourt shall endeavor to provide for each person coming under its jurisdiction such control, care, and treatment as will best serve the interests of the public, the family, and the offender, to the end that the home will, if possible, remain unbroken and the family members will recognize and discharge their legal and moral responsibilities to the public and to one another.[17]
Section 1002 provides that "[e]xcept as provided in § 1010, no child shall be deemed a criminal by virtue of an allegation or adjudication of delinquency." That Section further provides that, in the Family Court, "the nature of the hearing and all other proceedings shall be in the interest of rather than against the child."[18]
22. We find no conflict between Sections 4120 and 4121 of Title 11 and Sections 902 and 1002 of Title 10. Section 902 protects both the interest of the juvenile offender and the interests of the public. Section 1002 does not absolutely prohibit proceedings that might be against the interest of a child. Section 1010, which is expressly referenced in Section 1002, allows a child to be proceeded against as an adult where, among other things, "[t]he acts alleged to have been committed constitute . . . rape in the second degree," or "[t]he child is not amenable to the rehabilitative processes available to the [Family] Court." To the extent a conflict arguably exists between a juvenile's interest in privacy and the State's interest in protecting society from all sex offenders, the Delaware General Assembly, by enacting the sex offender registration and notification statute, chose as a policy matter to protect the latter.[19] As this Court has stated:
[A]lthough we are aware that the juvenile justice system places emphasis on the best interests of the child, sex offenders of any age present unique problems. The General Assembly enacted the Sex Offender Registration Statute in an effort to protect society from both the adult and the youthful sex offender. [. . .] The Delaware General Assembly chose to condition application of the statute on the seriousness of the offense committed. Whether application of the statute should be contingent upon the juvenile's age, or whether age is a factor in determining tier assignment is essentially a policy determination best left to the legislature.[20]
23. We conclude that the Family Court correctly applied Sections 4120 and
4121 of Title 11 to Clark, thereby requiring him to register as a Tier III sex offender.
NOW, THEREFORE, IT IS ORDERED that the judgments of the Family Court are AFFIRMED.
NOTES
[1] The Court, sua sponte, has assigned a pseudonym to the appellant under Supr. Ct. R. 7(d).
[2] The interview was recorded and was played at trial pursuant to 11 Del. C. § 3507.
[3] The petition alleged that "The defendant placed his hands up the victim's shirt and bra in order to feel her breast. The defendant did have his penis exposed and attempted to place his hands down the victim's pants." See 11 Del. C. § 772.
[4] The petition alleged that "The defendant did touch the victim's leg with his penis." 11 Del. C. § 768 relevantly states: "A person is guilty of unlawful sexual contact in the second degree when the person intentionally has sexual contact with another person who is less than 16 years of age or causes the victim to have sexual contact with the person or a third person."
[5] See 11 Del. C. § 772(a)(1) (defining rape in the second degree as "the person . . . [i]ntentionally engages in sexual intercourse with another person, and the intercourse occurs without the victim's consent") and 11 Del. C. § 531(2) (defining "attempt to commit a crime" where the defendant "[i]ntentionally does . . . anything which, under the circumstances as the person believes them to be, is a substantial step in a course of conduct planned to culminate in the commission of the crime by the person"). A "substantial step" is "an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which the defendant is charged with attempting." See 11 Del. C. § 532.
[6] Flonnory v. State, 893 A.2d 507, 537 (Del. 2006). See Fam. Ct. Crim. R. 29.
[7] Farmer v. State, 844 A.2d 297, 300 (Del. 2004) (citing Hardin v. State, 840 A.2d 1217, 1224 (Del. 2003)).
[8] The victim's lack of consent is not an "attendant circumstance," as the State incorrectly argues, but an element of the crime of Attempted Rape in the Second Degree, which the State had the burden to prove beyond a reasonable doubt.
[9] The transcript of Clark's motion for a judgment of acquittal reveals that Clark's motion challenged only the sufficiency of the State's evidence with respect to Clark's intention to engage in "sexual intercourse," (an element of the crime of Attempted Rape in the Second Degree) as opposed to "unlawful sexual contact." Clark's motion made no claim as to the insufficiency of the evidence relating to the "without consent" element of Attempted Rape in the Second Degree. Moreover, after the Family Court denied his motion for a judgment of acquittal, Clark presented only an alibi defense at trial, and did not argue as an alternative defense that he attempted to engage only in "consensual" sexual intercourse with Casey.
[10] 11 Del. C. § 761(i).
[11] The statutory definition of "coercion" includes situations where a person "compels or induces a[nother] person to engage in conduct which the victim has a legal right to abstain from engaging in . . . by means of instilling in the victim a fear that, if the demand is not complied with, the defendant or another will . . . [c]ause physical injury to a person." See 11 Del. C. § 791.
[12] A defendant "attempt[s] to commit a crime" where the defendant "[i]ntentionally does . . . anything which, under the circumstances as the person believes them to be, is a substantial step in a course of conduct planned to culminate in the commission of the crime by the person." See 11 Del. C. § 531(2).
[13] See 11 Del. C. § 532.
[14] Watson v. Burgan, 610 A.2d 1364, 1367 (Del. 1992); Poteat v. State, 840 A.2d 599, 603 (Del. 2003). The State argues that the standard of review should be plain error, because the issue was not raised below. But, the issue could not have been raised below. With one limited exception (not applicable here), the Family Court had no discretion to determine whether or not a particular juvenile adjudicated delinquent of an enumerated offense is required to register as a sex offender. See Coleman v. State, 729 A.2d 847, 851 (Del. 1999) (holding that "[i]f the sentencing judge determines that the conviction was for one of the offenses enumerated in the statute, . . . the defendant must be registered as a sex offender.") (emphasis in original); Helman v. State, 784 A.2d 1058, 1066 (Del. 2001) (holding that "[t]he sentencing court has no discretion in assigning an individual designated as a sex offender to one of three Risk Assessment Tier levels). Therefore, the standard of review is de novo.
[15] Helman v. State, 784 A.2d at 1065-66 (internal citations omitted).
[16] 11 Del. C. § 4121(a)(4) defines "sex offender" as "any person, who is, or has been":

a. Convicted of any of the offenses specified in §§ 765 through 780, § 1100, §§ 1108 through 1112A, § 1335(a)(6), § 1335(a)(7), § 1352(2) or § 1353(2) of this title, or of any attempt to commit any of the aforementioned offenses; or
b. Any juvenile who is adjudicated delinquent of any offense which would constitute any of the offenses set forth in paragraph (a)(4)a. of this section if that juvenile delinquent had been charged as an adult [. . . ]
[17] 10 Del. C. § 902 (emphasis added).
[18] 10 Del. C. § 1002.
[19] The sex offender registration and notification statute is the "more specific and later-enacted statute." Sections 902 and 1002 of Title 10 were enacted in 1971. See 58 Del. Laws, ch. 114, § 1 (1971). Section 4120 of Title 11 (registration requirement) was enacted in 1994. See 69 Del. Laws, ch. 282, § 1 (1994). Section 4121 of Title 11 (notification requirement) was enacted in 1998 and became effective on March 1, 1999. See 71 Del. Laws, ch. 429, § 2. "Generally accepted principles of statutory construction provide that, to the extent of any conflict, the expression of legislative intent in a more specific and later-enacted statute controls the former, more general statute." State v. Cook, 600 A.2d 352, 355 n. 6 (Del. 1991) (citing Blue Cross and Blue Shield of Delaware, Inc. v. Elliott, 449 A.2d 267, 270 (Del. Super. 1982)).
[20] Helman v. State, 784 A.2d at 1079.