# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | | |
|---|---|---|---|
| STATE OF DELAWARE, | ) | | |
| | ) | | |
| v. | ) | ID No. | 1801002038 |
| | ) | | |
| DONOVAN KENT, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## OPINION

Submitted: June 28, 2019
Decided: September 25, 2019

*Upon Consideration of Defendant's Motion for New Trial,*
**DENIED.**

*Upon Consideration of Defendant's Motion for Judgment of Acquittal,*
**DENIED.**

John S. Edinger, Jr., Assistant Public Defender, Office of Defense Services, Wilmington, Delaware. *Attorney for Defendant.*

Amanda J. DiLiberto, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for State.*

**MEDINILLA, J.**

# I. INTRODUCTION

On December 7, 2018, a jury returned guilty verdicts against Defendant Donovan Kent on two counts of Attempted Rape Second Degree, three counts of Unlawful Sexual Contact First Degree, and one count of Continuous Sexual Abuse of a Child. He timely moves this Court for acquittal as to the Attempted Rape Second Degree convictions under Superior Court Criminal Rule 29 based upon insufficiency of the evidence. Defendant also moves for a new trial under Superior Court Criminal Rule 33 and argues that the State's misrepresentations and vouching during closing arguments prejudiced and deprived him of his right to a fair trial.[1] For the reasons stated below, Defendant's motions are **DENIED**.

# II. FACTUAL AND PROCEDURAL BACKGROUND[2]

On December 4, 2018, this Court began a four-day jury trial in connection with the alleged sexual assault of a six-year old female child ("the child"). The State called several witnesses including the child, her mother and father, as well as law enforcement personnel, a Children's Advocacy Center (CAC) interviewer, and a forensic nurse examiner (FNE).

---

[1] Defendant's Motion for New Trial at ¶ 4 [hereinafter Def.'s Mot.].
[2] The recitation of the facts is based on the evidence presented at the trial held on December 4, 2018 through December 7, 2018.

Mother testified that she had known Defendant since childhood. She permitted Defendant to live with her family in the summer and early fall of 2017. Due to home renovations, Mother, her husband, and two sons slept in the only usable bedroom upstairs, and Defendant and the child slept downstairs in the living room on a futon and a mattress. On October 10, 2017, the child told her mother that "something happened" with Defendant.[3] Mother questioned both the child and Defendant, and because of their responses—described by Mother as both verbal and non-verbal—she decided to take the child to the hospital for an examination.

At the hospital, a forensic examination was performed by the FNE who testified that child reported that Defendant "had sex" with her.[4] The FNE testified that the child explained how "he put his hands inside of me . . . ,"[5] and that Defendant's hands were "under [the child's] underwear."[6] The child reported to her that "one time when he put his private on my leg and put his fingers on me[,] my privates hurt in the morning."[7] When asked about the frequency, the child reported that Defendant had touched her with "[his] private one time, [and] his hands lots of times."[8]

---

[3] Mother Trial Tr. at 25:20-21 (Dec. 4, 2018).
[4] FNE Trial Tr. at 11:21-22 (Dec. 5, 2018).
[5] *Id.* at 12:4-5.
[6] *Id.* at 12:11-12.
[7] *Id.* at 12:19-21.
[8] *Id.* at 12:23-13:1.

The FNE also conducted a physical examination and identified two results. The first was "an area of redness that was above [the child's] hymen."[9] The second was male DNA found on the child's genitalia. When asked if the area of redness was located inside the vagina, the FNE explained that the medical definition of vagina refers to the area inside of the hymen, known as the vaginal vault.[10] She testified that she did not take an internal swab (inside the vagina or the vaginal vault) during her examination because the procedure is painful for pediatric patients.[11]

This testimony led the jury through a lengthy explanation of medical definitions. She testified that the redness above the child's hymen and the child's complaint of pain presented that the potential injury was "more internal" and inside of the labia minora,[12] that could have been consistent with penetration or an injury from someone putting his fingers inside the child—"[t]here is a possibility that there could have been penetration into the vagina."[13] She explained that "there also is a possibility that there was penetration before the vaginal vault itself into those areas . . . ."[14] She further clarified on cross-examination that she did not "know that [she]

---

[9] FNE Trial Tr. at 14:6-7. (Dec. 5, 2018).
[10] *Id.* at 65:13-17.
[11] *Id.* at 17:1-2.
[12] *Id.* at 65:3-4.
[13] *Id.* at 76:7-9 (emphasis added).
[14] *Id.* at 76:17-19.

4

ever said that there wasn't evidence of vaginal penetration;"[15] rather, she described that typically pediatric cases involve fondling, not penetration.[16]

The State also admitted the out-of-court statements of the child from a CAC video interview under 11 *Del. C.* § 3507. The child described the alleged sexual encounters with Defendant that occurred at both her home and her aunt's house. She further described—and demonstrated through the use of a doll—how and where Defendant touched her, explaining the manner and frequency in detail.

The jury found Defendant guilty of three counts of unlawful Sexual Contact First Degree, two counts of Attempted Rape Second Degree, and one count of Continuous Sexual Abuse of a Child. The Court granted Defendant's request to a 90-day extension to file his motions, and Defendant filed his Motions for New Trial and for Judgment of Acquittal on March 8, 2019.[17] The State responded to both motions on or about April 23, 2019.[18] This Court provided Defendant with a deadline of June 28 to reply. The matter is now ripe for review.

---

[15] *Id.* at 31:5-6.

[16] *Id.* at 22:13-16, 31:6-8.

[17] Defendant's Motion for Judgment of Acquittal, *State v. Kent*, Crim. ID No. 1801002038, D.I. 33 (Del. Super. Mar. 8, 2019) [hereinafter Def.'s Mot. for Judgm. of Acquittal]; Defendant's Motion for New Trial, *State v. Kent*, Crim. ID No. 1801002038, D.I. 34 (Del. Super. Mar. 8, 2019) [hereinafter Def.'s Mot. for New Trial].

[18] State's Response to Defendant's Motion for Judgment of Acquittal, *State v. Kent*, Crim. ID No. 1801002038, D.I. 38 (Del. Super. Apr. 23, 2019) [hereinafter State's Resp. to Def.'s Mot. for Judgm. of Acquittal]. State's Response to Defendant's Motion for New Trial, *State v. Kent*, Crim. ID No. 1801002038, D.I. 40 (Del. Super. Apr. 22, 2019) [hereinafter State's Resp. to Def.'s Mot. for New Trial].

5

### III. MOTION FOR JUDGMENT OF ACQUITTAL

#### A. Standard of Review

A motion for judgment of acquittal arises under Rule 29.[19] A defendant's motion under Rule 29 asks "whether any rational trier of fact, after considering the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt."[20] Upon consideration of a motion for judgment of acquittal, the evidence and all reasonable inferences are considered in the light most favorable to the State.[21] Defendant challenges sufficiency of the evidence as to the guilty verdict of Attempted Rape Second Degree.

Defendant presents a two-fold argument for why there was insufficient evidence offered by the State to prove the lesser included offense of Attempted Rape Second Degree. First, he suggests that "given that the jury *unanimously agreed* the State had failed to prove beyond a reasonable doubt that Defendant (over 18 years of age) penetrated with his finger the vagina of alleged victim (less than 12 years old), there was no evidence to prove the lesser included offense of Attempted Rape Second Degree as opposed to the other lesser included offense of Unlawful Sexual

---

[19] Super. Ct. Crim. R. 29(c) ("*Motion after discharge of jury.* -- If the jury returns a verdict of guilty . . . a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period.").
[20] *Bethard v. State*, 28 A.3d 395, 397-98 (Del. 2011).
[21] *See State v. Biter*, 119 A.2d 894, 898 (Del. Super. 1955); *see also State v. Wright*, No I.D. 1208019720, 2014 WL 4088685, at *3 (Del. Super. Aug. 19, 2014).

Contact First Degree."[22]  Second, he argues that in order to prove a "substantial step" in the completion of the crime, the crime of Attempted Rape requires that the State present evidence of being "thwarted." He argues that "[b]y definition the 'substantial step' (fondling) must turn into a completed crime (rape) 'but for' being thwarted in some fashion."[23]  "[W]ithout evidence that 'but for' being thwarted from completion of the crime, anyone charged with Unlawful Sexual Contact would also be guilty of Attempted Rape as well."[24]  Both arguments are without merit.

### B. Analysis

The definition of Unlawful Sexual Contact First Degree (USC 1), applicable in this case, is "intentionally [having] sexual contact with another person who is less than 13 years of age . . . ."[25]  The definition of sexual contact is "any intentional touching by the defendant of the . . . buttocks or genitalia of another person"[26] or "[a]ny intentional touching of another person with the defendant's . . . genitalia...."[27] Here, the evidence included that Defendant placed his "private" on her leg "one time" and touched the child both on her buttocks and her genitalia "lots of times."[28]

---

[22] Def.'s Mot. for Judgm. of Acquittal ¶ 4.
[23] *Id.* at ¶ 27.
[24] *Id.* at ¶ 24.
[25] 11 *Del. C.* § 769(a)(3).
[26] *Id.* § 761(g)(1).
[27] *Id.* § 761(g)(2)
[28] FNE Trial Tr. at 12:22-13:1 (Dec. 5, 2018); *see* Kim Carpenter (CAC) Trial Tr. at 64:23-67:12 (Dec. 5, 2018).

As to some of the sexual encounters, the jury was also asked to consider Defendant's guilt for the offenses of both Rape Second Degree and Attempted Rape Second Degree. A conviction for Rape Second Degree required the jury to find that the defendant: 1) intentionally engaged in sexual penetration with another person, and 2) the victim had not yet reached her twelfth birthday and the defendant was at least eighteen years of age at the time.[29] Sexual penetration is defined as "the unlawful placement of an object…inside the anus or vagina of another person…."[30] An object includes "any part of the body."[31] Because the jury did not find Defendant guilty of this charge, he argues that the jury "unanimously agreed" on the issue of penetration to lay the foundation for acquittal as to the Attempted Rape Second Degree.

First, Defendant's claim that the jury "unanimously agreed" that the State failed to prove the element of sexual penetration is incorrect. The best that can be said is that twelve people did not reach unanimity as to his guilt on the count of Rape Second Degree. While it is true that the twelve *may* have reached consensus as to the element of penetration, equally plausible is that eleven jurors could have found the State established this element beyond a reasonable doubt but one juror was not

---

[29] 11 *Del. C.* § 772(a)(2)(g).
[30] *Id.* § 761(j)(1).
[31] *Id.* § 761(d).

8

firmly convinced of Defendant's guilt. Furthermore, the jury was instructed[32] that if it was unable to reach unanimity or it hit an impasse as to the offense of Rape Second Degree, it could consider the lesser-included offense of Attempted Rape Second Degree. That is what the jury did. Thus, the Court does not accept Defendant's contention that the jury unanimously agreed on anything except as to its findings of guilt, including Attempted Rape Second Degree.

Second, even accepting the Defendant's suggestion that twelve persons agreed that the State did not establish the element of penetration, it does not vitiate the jury's finding that he was guilty of Attempted Rape Second Degree. If the State did not establish the element of sexual penetration as medically—thus legally— defined, the question is whether the evidence was nevertheless sufficient for a jury to find that Defendant took a substantial step in the course of conduct to culminate in the commission of rape and find him guilty of Attempted Rape Second Degree.

A defendant is guilty of Attempt to commit a crime if he "intentionally does or omits to do anything which, under the circumstances as the person believes them

---

[32] "If, after considering all of the evidence, you find that the State has established beyond a reasonable doubt that the Defendant acted in such a manner as to satisfy all of the elements...you should find the Defendant guilty of Rape in the Second Degree. If you do not so find, or if you have a reasonable doubt as to any element of this offense, you must find the Defendant not guilty of Rape in the Second Degree.... In such a case or in the event that you are at an impasse and are unable to reach a unanimous verdict on the charge or Rape Second Degree, then you may go on to consider the lesser-included offense (LIO) of Attempted Rape Second Degree." Delaware Jury Instructions, *State v. Kent*, Crim. ID No. 1801002038, D.I. 20, Page 7 (Del. Super. Dec. 7, 2018).

to be, is a *substantial step* in a course of conduct planned to culminate in the commission of a crime by the person."[33] A "substantial step is an act or omission which leaves no reasonable doubt as to the defendant's intention to commit the crime which the defendant is charged with attempting."[34]

Defendant relies on *Farmer v. State*[35] and *Clark v. State*[36] to suggest that the State failed to establish the required element of a "substantial step" for Attempted Rape Second Degree. He argues there is no evidence that the child thwarted his advances, failed to close her legs tightly, told him to stop, physically resisted his advances, or refused to consent. He contends the absence of this evidence is fatal to the State's case. Defendant's reliance on this authority is misplaced.

Neither *Clark* nor *Farmer* requires the State to present evidence that Defendant was "thwarted" from completing the crime of rape due to "intervening forces" in order to establish the element of a "substantial step." *Clark* is distinguishable where it primarily assessed the nature of consent.[37] Consent is not an issue here. *Farmer* decided whether "a victim's testimony alone, concerning alleged sexual contact, [was] sufficient to support a guilty verdict . . . ."[38] Here, the

---

[33] 11 *Del. C.* § 531(2) (emphasis added).
[34] *Clark v. State*, 957 A.2d 1, 2008 WL 3906890, at *4 (Del. Aug. 26, 2008) (TABLE) (quoting 11 *Del. C.* § 532) (internal quotations omitted).
[35] 844 A.2d 297 (Del. 2004).
[36] 957 A.2d 1, 2008 WL 3906890 (Del. Aug. 26, 2008) (TABLE).
[37] *See generally Clark*, 957 A.2d 1, 2008 WL 3906890.
[38] *Farmer v. State*, 844 A.2d 297, 300 (citing *Hardin v. State*, 840 A.2d 1217, 1224 (Del. 2003)).

10

State presented more than the child's testimony. The law does not require the State prove that the victim, someone else or something caused, prevented, prohibited or otherwise stopped defendant from carrying out the intentional planned conduct. Defendant's argument would place a burden on victims of sexual assault that this Court is not willing to impose on anyone, regardless of age.

The law requires that the State prove that defendant took a substantial step in a course of that conduct planned. Here, the jury was free to accept the evidence—the child's account of Defendant having "had sex" with her, her description of the sexual encounters, and the FNE's findings on the child's genitalia—to find that Defendant attempted to sexually penetrate the child and, in doing so, took a substantial step in a course of conduct planned to culminate in the commission of Rape Second Degree.

In considering the evidence and all legitimate inferences in the light most favorable to the State, the Court finds that a rational fact finder could find Defendant guilty of Attempted Rape Second Degree. Therefore, Defendant's Motion for Acquittal is denied.

## IV. MOTION FOR NEW TRIAL

Defendant's timely Motion for New Trial is considered under Rule 33 in the interest of justice,[39] and addressed to the sound discretion of the court.[40] Under Rule 33, Defendant argues that the State improperly vouched for one of its witnesses, improperly vouched for its case, and misstated the evidence on five occasions during closing arguments.[41] Defendant contends that the State's misstatements and vouching deprived him of a fair trial because they were pervasive and repetitive errors.[42] Because Defendant made timely objections as to alleged prosecutorial misconduct, and also raises some claims as to statements made that were not objected to at trial, the claims will be considered separately under both harmless and plain error reviews.[43]

### A. Defense's Timely Objections

Defense counsel timely objected to the State's use of the word "absolutely" in its closing argument discussed in more detail below. These statements are examined under a harmless error review.[44]

---

[39] Super. Ct. Crim. R. 33. ("The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice... A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.").

[40] *See Johnson v. State*, 628 A.2d 83, 1993 WL 245374, at *1 (Del. June 22, 1993) (TABLE) (citing *Hutchins v. State*, 153 A.2d 204, 206 (Del. 1959)).

[41] Def.'s Mot. for New Trial ¶¶ 5-14.

[42] *Id.* at ¶¶ 20-21.

[43] *See Baker v. State*, 906 A.2d 139, 148 (Del. 2006).

[44] *See Id.* ("If defense counsel raised a timely . . . objection to prosecutorial misconduct at trial . .

12

### 1. Standard of Review – Harmless Error

The Court reviews for harmless error review using a three-part analysis. First, the Court reviews for harmless error using the "record to determine whether the prosecutor's actions were improper."[45] If the Court determines that no misconduct occurred, the analysis ends.[46] Second, if the Court finds that prosecutorial misconduct occurred, it will then decide "whether the misconduct prejudicially affected the defendant,"[47] using the test articulated in *Hughes v. State*[48] (the "*Hughes* test").[49] The Court examines "(1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error."[50] If the Court finds under the *Hughes* test that misconduct warrants reversal, the analysis ends. Third, if the Court finds that the conduct does not prejudice the defendant under the *Hughes* test, it considers the test articulated in *Hunter v. State*[51] (the "*Hunter* test").[52]

---

. we essentially review for "harmless error.").

[45] *State v. Spence*, 2014 WL 2089506, at *4 (Del. Super. May 15, 2014) (citing *Kirkley v. State*, 41 A.3d 372, 376 (Del. 2012)) [hereinafter "*Spence I*"].

[46] *See Baker*, 906 A.2d at 148.

[47] *Spence v. State*, 129 A.3d 212, 219 (Del. 2015) (quoting *Kirkley v. State*, 41 A.3d 372, 376 (Del. 2012) [hereinafter "*Spence II*"].

[48] 437 A.2d 559 (Del. 1981).

[49] *Spence II*, 129 A.3d at 219.

[50] *Baker*, 906 A.2d at 149 (citing *Hughes*, 437 A.2d at 571) (*Hughes* Test factors are not conjunctive, and one factor may outweigh the others).

[51] 815 A.2d 730 (Del. 2002).

[52] *Baker*, 906 A.2d at 149 (citing *Hunter*, 815 A.2d at 732-33) (The *Hunter* test examines "whether the prosecutor's statements are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process.").

## 2. Under *Hughes,* The Statements Were Not Improper.

The Delaware Supreme Court has acknowledged that "closing argument is an aspect of a fair trial which is implicit in the due process clause of the Fourteenth Amendment by which the States are bound."[53] It is well established that "a prosecutor may not misrepresent the evidence presented at trial,"[54] is allowed to explain legitimate inferences that can be drawn from the evidence, and is not confined to repeat the evidence that was presented at trial.[55] Her role is not only to convict the guilty, but also to protect the rights of the accused[56] and to seek justice.[57]

Defendant argues that the State vouched for its case by using the adverb "absolutely" several times, in reference to the child's injury having been caused by sexual penetration.[58] The State summarized its closing argument with the following:

> It is your job to judge the credibility of the witnesses, piece together all the evidence that's been presented, and determine whether you think this really happened. And the State submits that it *absolutely* did and asks you to find the defendant guilty on all charges.[59]

---

[53] *Brokenbrough v. State,* 522 A.2d 851, 860 (Del. 1987) (quoting *Bailey v. State,* 440 A.2d 997, 1003 (Del. 1982)).

[54] *Williams v. State,* 91 A.3d 563, 2014 WL 1515072, at *3 (Del. Apr. 16, 2014) (TABLE) (citing *Flonnory v. State,* 893 A.2d 507, 540 (Del. 2006)); *Hunter,* 815 A.2d at 735 (citing *Morris v. State,* 795 A.2d 653 (Del. 2002)).

[55] *See Hooks v. State,* 416 A.2d 189, 204 (Del. 1980) (citation omitted).

[56] *See id.* (citation omitted).

[57] *See Hunter,* 815 A.2d at 735 (citing *Sexton v. State,* 397 A.2d 540, 544 (Del. 1979)).

[58] *See* Def.'s Mot. for New Trial ¶ 14.

[59] State's Closing Argument Tr. at 24:14-19 (Dec. 7, 2018).

14

At the completion of the State's closing argument, Defense counsel objected to the State's use of the word "absolutely," arguing that the prosecutrix was interjecting her opinion into her closing statement.[60] At the request of Defendant, the Court issued a curative instruction that provided:

> I have previously instructed you and I remind you that the attorneys' beliefs or opinions are to be disregarded....[T]he belief concerning the testimony or the evidence which an attorney offers during opening statements or closing arguments are simply not relevant. What an attorney personally thinks about testimony or evidence in this case is not relevant. You are to be guided and will be told over and over and over again that you are to base your verdicts solely on the evidence that is presented in the case.[61]

The Delaware Supreme Court has explained that "improper vouching by a prosecutor for the credibility of a witness implies that the prosecutor has superior knowledge that the witness has testified truthfully 'beyond that logically inferred from the evidence.'"[62] The Delaware Supreme Court has not adopted a rule that it is *per se* improper to use the words "I" or "we" in closing argument, but it has explained that the use of the first person is "extremely dangerous and should be assiduously avoided."[63]

---

[60] *Id.* at 24:21-29:5.
[61] *Id.* at 29:7-18.
[62] *Trump v. State*, 753 A.2d 963, 966 (Del. 2000) (quoting *Miller v. State*, 750 A.2d 530, 2000 WL 313484, at *4 (Del. Feb. 16, 2000) (TABLE)).
[63] *Trump*, 753 A.2d at 968 (quoting *Brokenbrough v. State*, 522 A.2d 851, 859 (Del. 1987)).

The Delaware Supreme Court has recommended that the better practice is for the prosecution to use the terms "the State submits" or "it is the State's position."[64] In *Morales v. State*, the majority found the alleged improper statement[65] to be improper because the prosecutor failed to qualify the language, "such as, for example, 'the evidence demonstrates.'"[66] The *Morales* Court nevertheless affirmed the defendant's conviction finding that the improper statement did not amount to plain error.[67]

In his concurrence, Chief Justice Strine, while agreeing with the Majority that the statement did not amount to plain error, also did not consider the statement to be improper. He poses that altering language, using qualifying phrases, from "[t]he defendant is clearly guilty" to "the State submits that there is clear evidence of the defendant's guilt," does not change the substance of the initial statement.[68] He notes that the original statement, although not tempered with qualifying language, does *not* imply that the prosecutor had "personal superior knowledge, beyond what is logically inferred from the evidence at trial."[69]

---

[64] *Hardin v. State*, 840 A.2d 1217, 1220 (Del. 2003) (citing *Trump*, 753 A.2d at 968).
[65] "The defendant is clearly guilty of robbery that happened that day. I ask you to return a verdict of guilty on both offen[s]es." *Morales v. State*, 133 A.3d 527, 529 (Del. 2016)
[66] *Morales*, 133 A.3d at 531 (quoting *Spence II*, 129 A.3d 212, 227 (Del. 2015)).
[67] *See Morales*, 133 A.3d at 532–33.
[68] *See id.* at 534 (Strine, CJ., concurring).
[69] *See id.* (Strine, CJ., concurring) (emphasis added).

The Delaware Supreme Court has emphasized the absence of "qualifying language" in determining the propriety of the language used. Accordingly, this Court finds the prosecutor's statement was proper. It was tempered with qualifying language so as to avoid presenting information in the form of fact or personal belief. She qualified her language with the terms "the State submits," with language emphasizing that it is the jury's job "to judge the credibility of the witnesses, [by] piecing together all the evidence that's presented"[70] and to "decide whether the [child's injury was] internal or external."[71] Only through weaving in between those statements, did the "State submit" using the word "absolutely."[72]

Notably, Chief Justice Strine points to the general nature of trial, whereby it is understood that "the prosecutor subjectively believes the defendant to be guilty."[73] He emphasizes that, "as an ethical matter, it is critical that the State and its prosecutor believe they are prosecuting a guilty defendant."[74] With that understanding and

---

[70] State's Closing Argument Tr. at 24:14-19 (Dec. 7, 2018).

[71] *Id.* at 14:17-18.

[72] *Id.* at 24:14-19, 14:3- 21, 23:2-18 (emphasis added).

[73] *Morales*, 133 A.3d at 535 (Strine, CJ., concurring) (citing WAYNE R. LAFAVE, ET AL., 4 CRIM. PROC. § 13.1(b) n.34.2 (3d ed. 2014) (explaining the "common assumption" that the prosecutor can proceed only when she believes that the defendant is guilty); Sarah Anne Mourer, *Believe It or Not: Mitigating the Negative Effects Personal Bias and Belief Have on the Criminal Justice System*, 43 HOFSTRA L. REV. 1087, 1096 (2015) (noting that "it is clear that the prosecutor must believe that the defendant is guilty to proceed to trial"); Alafair S. Burke, *Talking About Prosecutors*, 31 CARDOZO L. REV. 2119, 2134–35 (2010) ("Because the prosecutor believes that the defendant is guilty, she is likely to weigh the evidence against him as strong.")).

[74] *Morales*, 133 A.3d at 535 (Strine, CJ., concurring) (citing Alafair S. Burke, *Prosecutorial Agnosticism*, 8 OHIO ST. J. CRIM. L. 79, 79 (2010) ("Most legal ethicists maintain that an ethical prosecutor should not pursue criminal charges against a defendant only if the prosecutor personally believes that the defendant is guilty."); Bruce A. Green, *Why Should Prosecutors*

17

expectation in mind, "[a]n isolated statement of the kind at issue here therefore poses no danger" in regards to a jury being told "to believe the prosecutor over the other evidence," or where "there is some basis for conviction other than the evidence which the prosecutor recited just the moment before."[75] Therefore, although the term *absolutely* alone would have been improper, it is not improper where the State has sufficiently posed the term between qualifying language. She further did not imply that she possessed some superior knowledge beyond what the jury could infer from the evidence.

Even if the Court were to find that the State engaged in improper vouching of its case by utilizing the term "absolutely," this improper vouching would not be prejudicial to Defendant. To determine prejudice, the Court examines "(1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error."[76] In reading the context of the statements, the State was arguing that the evidence was sufficient for the jury to find

---

*"Seek Justice"?*, 26 FORDHAM URB. L.J. 607, 640–41 (1999) ("Prosecutors have the power, freedom and responsibility to make decisions for the sovereign in the criminal context.... They must satisfy themselves of an individual's guilt as a precondition to determining that the conviction of an individual is an end to be sought on behalf of the state or the federal government."); Bennett L. Gershman, *A Moral Standard for the Prosecutor's Exercise of the Charging Decision*, 20 FORDHAM URB. L.J. 513, 522 (1993) ("[B]efore making the ultimate decision to charge, the prosecutor should then assure herself that she is morally certain that the defendant is both factually and legally guilty.... Finally, the prosecutor who acknowledges moral uncertainty about a defendant's guilty but decides nonetheless to bring charges, violates the prosecutor's special obligation to seek justice, and tacitly invites the system to miscarry.")).
[75] *Morales*, 133 A.3d at 535 (Strine, CJ., concurring).
[76] *Baker v. State*, 906 A.2d 139, 149 (Del. 2006) (citing *Hughes v. State*, 437 A.2d 559, 571 (Del. 1981)).

18

that the State had proven its case as to sexual penetration for a guilty finding of Rape Second Degree. The jury did not find Defendant guilty of Rape Second Degree and they did not accept the State argument. Thus, Defendant was not prejudiced.

## B. Defense's Untimely Objections

As to the remaining claims, defense counsel failed to timely object to (1) alleged misstatements by the State and (2) alleged improper vouching by the State. The Court reviews for plain error when defense counsel failed to raise a timely objection at trial and the trial judge does not intervene *sua sponte*.[77] Statements not objected to at trial are examined under *Wainwright* for plain error.

### 1. Standard of Review – Plain Error

For these untimely claims, the Court reviews for plain error review using a three-part analysis.[78] This review "is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right or which clearly show manifest injustice."[79] First, the Court examines "the record *de novo* to determine

---

[77] *See Morales*, 133 A.3d at 529 (citing *Baker*, 906 A.2d at 150 ("Where defense counsel fails to raise a timely and pertinent objection to alleged prosecutorial misconduct at trial and the trial judge does not intervene *sua sponte*, we review only for plain error.") (citations omitted)); *see also Baker*, 906 A.2d at 149 (citing *Kurzmann v. State*, 903 A.2d 702, 709 (Del. 2006) ("If defense counsel failed [to raise a timely objection] . . . we review only for plain error.")).
[78] *See Morales*, 133 A.3d at 529; *see also Spence II*, 129 A.3d 212, 226 (Del. 2015); *see also Baker*, 906 A.2d at 150.
[79] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (internal citations omitted).

19

whether prosecutorial misconduct occurred."[80]  Second, the Court applies the *Wainwright v. State*[81] standard to determine whether any prosecutorial misconduct resulted from plain error. [82]  Under *Wainwright*, "[t]he error complained of must be so clearly prejudicial to substantial rights [of the defendant] as to jeopardize the fairness and integrity of the trial process."[83]  If the Court determines under this standard that plain error occurred, the Court must reverse.  Third, if the Court finds that the misconduct does not warrant reversal under *Wainwright*, it applies the *Hunter* test articulated above.[84]

### 2.  Under *Wainwright*, The Statements Were Not Improper

#### *The State Did Not Misstate Facts*

Defendant highlights five instances of alleged misstatements by the Deputy Attorney General that piggy-back on the use of the word "absolutely" as it relates to 1) whether the injury was internal, 2) the representations regarding the DNA evidence, comments regarding 3) the source and 4) timing of the findings by the FNE of the child's redness/potential injury, and 5) a repeat comment regarding the FNE's testimony regarding penetration.  The Court will address them in order.

---

[80] *Baker*, 906 A.2d at 150; *see also Morales*, 133 A.3d at 530.
[81] 504 A.2d 1096 (Del. 1986) (establishing the "*Wainwright* Test.).
[82] *See Morales*, 133 A.3d at 529; *see also Baker*, 906 A.2d at 150.
[83] *Wainwright*, 504 A.2d at 1100 (internal citations omitted).
[84] *Baker*, 906 A.2d at 149 (citing *Hunter v. State*, 815 A.2d 730, 732-33 (Del. 2002)) (The *Hunter* test examines "whether the prosecutor's statements are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process.").

The State argued and submitted that the child's injury was *"absolutely* an internal injury"[85] in this context:

> [W]e can't be 100 percent sure about anything, but that that injury could be consistent with sexual assault . . . and could be consistent with penetration . . . .
>
> . . . it's your job to decide whether it is internal or external, and the State submits to you that it's absolutely an internal injury . . . .[86]

The FNE testified that the area of the injury was "internal" or "more internal" because it is inside of the labia minora.[87] This Court finds that the State did not misstate the evidence. This argument was appropriate in light of the evidence that came not only from the FNE, but also from the testimony of the child who explained that he placed his fingers "in" her. Thus, this statement was not improper. Again, even if it had been improper, the statement was made unsuccessfully to suggest that the State established evidence of penetration.

The Defendant next argues that the State misstated facts regarding the DNA, the source of the child's injury, and the timing of the child's injury.[88] These alleged misstatements, made in conjunction with each other, are as follows:

> That male DNA came from one person and one person only, and . . . that injury came from one person and one person only, and that's Donovan Kent. And Donovan Kent put his fingers inside of [the

---

[85] State's Closing Argument Tr. at 14:17-18 (Dec. 7, 2018).
[86] *Id.* at 14:3-21.
[87] FNE Trial Tr. at 65:3-6 (Dec. 5, 2018).
[88] Def.'s Mot. for New Trial ¶¶ 6-8.

21

child's] private area, *inside her vagina*, causing that injury . . . . That's what happened in this case, ladies and gentlemen of the jury.

Coincidental that on the same day that that forensic nurse examiner saw the injury and only five cases of all that she saw, that was one of the injuries she's seen and photographed on a sexual assault victim. And on that same day the DNA swab contained male DNA. That's not just a coincidence. That's because Donovan Kent committed the offenses of rape in the second degree, unlawful sexual contact and continuous sexual abuse of a child . . . .[89]

Mother took the child to the hospital on the same day that the child reported that something had occurred with Defendant. On that same day, the forensic exam found male DNA on the child's genitalia. In contextual relation to the record, it was not improper for the State to argue that the jury could make the reasonable inference that the male DNA came from Defendant.

The FNE also reported that she found redness above the child's hymen; a finding significant enough to report as a potential injury. Defendant argues that the State improperly linked the timing of the injury with the timing of the finding of male DNA. This is not so. The statement highlighted that the results of the forensic examination yielded two important medical findings: redness/injury above the child's hymen and male DNA on her genitalia.

It was proper for the State to summarize these findings. The jury was free to weigh them to determine whether an actual injury occurred or whether the redness

---

[89] State's Closing Argument Tr. at 21:21-22:17 (Dec. 7, 2018) (emphasis added).

22

came from "wiping" as argued by the Defendant. The jury was also free to consider whether the male DNA could have come from other males such as her brothers or her father, through transmittal such as an innocuous household sharing of the family's towels, also argued by Defendant. To challenge Defendant's theory that the DNA came from other sources, the State appropriately argued that the timing of the FNE's findings, coupled with the child's reporting, suggested that Defendant "committed the offense of Rape in the Second Degree." Again, the jury did not accept the argument. The Court finds that these statements were not improper.

Defendant lastly takes issue with the use of the State's representation that there existed an injury versus a potential injury as argued:

> You saw that injury and you heard the forensic nurse examiner talk about that injury being right … above the hymenal ring to the vagina, and that *that injury could have easily occurred to consistent with penetration*, combined with [the child's] words about him going in the middle and moving his fingers around. It's your job to decide whether it was penetration . . . or . . . just fondling . . . . That's up to…you, but the State submits there was *absolutely penetration* based on that little girl's words, especially combined with *that injury* . . . .[90]

Defendant again takes issue with the State's use of the words "easily" and "absolutely"[91] and argues that the FNE testified to the opposite of what the State argued in its closing. The Court disagrees.

The exchange on cross examination of the FNE provides:

---

[90] *Id.* at 23:2-18 (Dec. 7, 2018) (emphasis added).
[91] Def.'s Mot. for New Trial ¶ 10.

A: Not having seen [the child's] genitalia before, I don't know if that's an injury or . . . something that's always there, but it's not something that should typically be there . . . so it has a potential for being an injury.

Q: So in other words this could be a condition of her hymen. You don't know whether that was an injury or her hymen may have that mark for whatever reason?

A: . . . I just noted that the redness was there, I don't know what it was from or what caused it which is why I took the photo, because it had the potential for being an injury.[92]

On redirect regarding the redness/injury, the State asked "Was there an injury in this case that could be consistent with penetration?"[93] The FNE responded "[y]es"[94] and she used the term "injury" to describe the redness in the child's vaginal area.[95] Thus, it was not improper for the State to argue the evidence that there was an injury in this case.

### *The State Did Not Improperly Vouch For Its Case*

Defendant argues that the State allegedly vouched for its witness, the child[96] when it describes the significance of the child's words "as very strong evidence."[97] The relevant portions include:

And on that same day the DNA swab contained male DNA. That's not just a coincidence . . . and that is evidence . . . beyond the child's words, which are very strong evidence in and of themselves.[98]

---

[92] FNE Trial Tr. at 43:16-44:4 (Dec. 5, 2018).
[93] *Id.* at 45:14-15.
[94] *Id.* at 45:16.
[95] *Id.* at 43:10-14.
[96] Def.'s Mot. for New Trial ¶ 13.
[97] *Id.* at ¶ 13.
[98] State's Closing Argument Tr. at 22:10-17 (Dec. 7, 2018) (emphasis added).

"[I]mproper vouching by a prosecutor for the credibility of a witness implies that the prosecutor has superior knowledge that the witness has testified truthfully 'beyond that logically inferred from the evidence.'"[99] Generally, prosecutors may not state "personal opinions or beliefs about the credibility of witnesses or lie about the truth of testimony."[100]

Through 11 *Del. C.* § 3507, the jury observed the child's demeanor and listened to a detailed account of the allegations of sexual acts committed by Defendant. Although the State could have restrained from qualifying the evidence as "strong," even if the Court found that the State was improperly vouching for the child, this statement did not prejudice Defendant's "substantial right[s] as to jeopardize the fairness and integrity of the trial process,"[101] nor does the statement show manifest injustice.[102] The State did not suggest anything beyond what the jury could logically infer from the evidence that did, in fact, weigh against Defendant. For the same reasons stated in the harmless error analysis, following *Morales,* these statements were not improper.

---

[99] *Trump v. State*, 753 A.2d 963, 966 (Del. 2000) (quoting *Miller v. State*, 750 A.2d 530, 2000 WL 313484, at *4 (Del. Feb. 16, 2000) (TABLE)).

[100] *Clayton v. State*, 765 A.2d 940, 942 (Del. 2001) (citing *Brokenbrough v. State*, 522 A.2d 851, 855 (Del. 1987)).

[101] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (citing *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982).

[102] *See Baker v. State*, 906 A.2d 139, 150 (Del 2006) (citing *Wainwright*, 504 A.2d at 1100).

The Court need not address the *Hunter* test as it finds that the alleged misstatements and vouching were not improper. Even if deemed improper, they are not prejudicial under *Hughes, Wainwright,* or *Hunter.* While the Deputy Attorney General repeated the use of some words such as "absolutely," her statements were not errors that require reversal and they do not cast doubt on the integrity of the judicial process. The State did not misstate facts or evidence, did not vouch for its case, and did not vouch for its witness in such a pervasive manner to require a new trial.

## CONCLUSION

Under Rule 29, Defendant is not entitled to judgment of acquittal as to both counts of Attempted Rape Second Degree, nor is he entitled to a new trial in the interests of justice under Rule 33. Therefore, Defendant's Motion for Judgment of Acquittal and Motion for New Trial are **DENIED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc:   Prothonotary
cc:   Defendant
       Amanda J. DiLiberto, Esq., Department of Justice
       John S. Edinger, Jr., Esq., Office of Defense Services
       Investigative Services Office